BRONSON METHODIST HOSPITAL v FORSHEE

FORSHEE v MICHIGAN MUTUAL INSURANCE COMPANY

Docket Nos. 128662, 128663, 129017, 129018. Submitted November 4, 1992, at Grand Rapids. Decided March 15, 1993, at 9:15 A.M. Leave to appeal sought.

Bronson Methodist Hospital brought an action in the Kalamazoo Circuit Court against Judy Forshee, seeking payment of medical bills incurred in connection with the treatment of Forshee's minor son for injuries received in an automobile accident. Forshee filed a third-party action against Michigan Mutual Insurance Company, the insurer of her automobile, and State Farm Mutual Automobile Insurance Company, insurer of the automobile that Forshee's son was driving at the time of the accident, seeking no-fault medical benefits. Auto Club Insurance Association, which had been assigned the son's claim by the assigned claims facility, intervened as a third-party plaintiff, seeking reimbursement of no-fault benefits that it had paid. Judy Forshee, as guardian of her son, brought an independent action against Michigan Mutual and State Farm, asserting claims similar to those made in the third-party action, and ACIA intervened as a plaintiff in that action. The actions were consolidated for trial. Following a bench trial, the court, Richard R. Lamb, J., found Judy Forshee liable to Bronson Hospital for the bills arising out of the care of her son, determined that Forshee's son was not entitled to no-fault benefits under either the Michigan Mutual or the State Farm policy because he had unlawfully taken the automobile involved in the accident, and held that if Forshee's son had not been disqualified from benefits under those policies, the benefits would have been payable under the Michigan Mutual policy. Forshee and ACIA appealed, and Michigan Mutual cross appealed. The appeals were consolidated.

The Court of Appeals *held:*

1. The record establishes an unbroken chain of permissive

REFERENCES

Am Jur 2d, Automobile Insurance §§ 191, 193, 257, 351, 354, 356.

Automobile liability insurance policy flight from police exclusion: validity and effect. 49 ALR4th 325.

entrustment flowing from the owner of the automobile involved in the accident to Forshee's son. The fact that the use of the automobile by Forshee's son was contrary to the instructions of the owner when he entrusted the automobile to his son and the instructions of the son when he entrusted the automobile to the person who entrusted the automobile to Forshee's son does not render the use of the automobile by Forshee's son an unlawful taking within the meaning of MCL 500.3113(a); MSA 24.13113(a). Forshee's son reasonably could have believed that he was entitled to take and use the automobile. Accordingly, the trial court erred in determining that Forshee's son was precluded from receiving no-fault personal protection benefits.

2. Because MCL 500.3113(a); MSA 24.13113(a) focuses on the unlawful taking of a vehicle rather than its unlawful use, the unlawful use of the vehicle in this case, i.e., its driving by Forshee's son without a license, does not evoke the statutory proscription.

3. The use of an automobile in an attempt to evade the police does not disqualify the driver of the automobile from the right to no-fault benefits.

4. An injury arising out of reckless or wanton conduct in the operation of a vehicle does not constitute an intentional injury that will preclude entitlement to no-fault benefits. An intent to cause the injury, rather than merely an intent to do the act that results in the injury, is required before no-fault benefits will be denied under the intentional injury exclusion.

5. The trial court's finding that Forshee's son was domiciled with her is supported on the record and cannot be said to be error.

Affirmed in part, reversed in part, and remanded.

1. INSURANCE — NO-FAULT — UNLAWFUL USE OF VEHICLE — CON-SENT.

Use of a motor vehicle in violation of restrictions placed on its use by its owner when entrusting it to others does not render such use of the vehicle an unlawful taking within the meaning of the no-fault act as long as there is an unbroken chain of permissive entrustment that extends back from the vehicle operator to the owner (MCL 500.3113[a]; MSA 24.13113[a]).

2. INSURANCE — NO-FAULT — EVADING POLICE — DISQUALIFICATION FROM BENEFITS.

The use of an automobile in an attempt to evade the police does not disqualify the driver of the automobile from the right to no-fault benefits (MCL 500.3105; MSA 24.13105).

3. INSURANCE — NO-FAULT — RECKLESS OR WANTON CONDUCT —
    INTENTIONAL INJURIES.

    An injury arising out of reckless or wanton conduct in the
    operation of a vehicle does not constitute an intentional injury
    that will preclude entitlement to no-fault benefits; an intent to
    cause the injury, rather than merely an intent to do the act
    that results in the injury, is required before no-fault benefits
    will be denied under the intentional injury exclusion (MCL
    500.3105[4]; MSA 24.13105[4]).

*Sloan, Newton, Stevens & Yokom* (by *Gary C. Newton*), for Judy Forshee.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Schoolmaster & Taylor* (by *David J. Lanctot*), and *Gross & Nemeth* (by *Mary T. Nemeth* and *James G. Gross*), for Auto Club Insurance Association.

*Lilly, Domeny & Byrne* (by *Terrence J. Lilly*), for Michigan Mutual Insurance Company.

*Cholette, Perkins & Buchanan* (by *Robert J. Riley*), for State Farm Mutual Automobile Insurance Company.

Before: HOOD, P.J., and SAWYER and JANSEN, JJ.

SAWYER, J. This consolidated appeal arises out of an action filed by plaintiff Bronson Methodist Hospital against Judy Forshee for medical expenses incurred in connection with the treatment of Forshee's minor son, Mark Forshee, following an automobile accident and from an action filed by Judy Forshee against defendants Michigan Mutual Insurance Company and State Farm Mutual Automobile Insurance Company for failure to pay no-fault benefits. Auto Club Insurance Association intervened, seeking reimbursement for no-fault benefits it paid on behalf of Mark Forshee after the claim was assigned to it by the assigned claims

facility pursuant to MCL 500.3172; MSA 24.13172. Following a bench trial, the trial court found Judy Forshee liable to Bronson Methodist Hospital, Bronson-Vicksburg Hospital, and Careflight in the total amount of $136,902.65. The trial court further determined that Mark Forshee was not entitled to no-fault insurance benefits and, therefore, entered judgment in favor of Michigan Mutual and State Farm and against Judy Forshee and Auto Club. Judy Forshee and Auto Club now appeal, and Michigan Mutual cross appeals. We affirm in part, reverse in part, and remand for further proceedings.

On the evening of March 3, 1988, Mark Forshee was drinking beer and taking controlled substances with three friends: Thomas Pefley, William Morrow, and Brian Antles. The group was traveling in the Pefley automobile, driven by Thomas Pefley and owned by his father, Stanley Pefley. During the course of the evening, the group was stopped by the police twice. On the first occasion, Thomas Pefley was ticketed for a burned-out headlight. During the second stop, a deputy confiscated two cases of beer and a billy club and arrested Thomas Pefley for violating his probation by carrying a concealed weapon. The deputy and Pefley apparently consulted on what to do with Pefley's automobile and, ultimately, the deputy asked Morrow to take custody of the automobile. Pefley yelled from the police cruiser at Morrow to "take the car home." After the patrol car left, Morrow began driving the car and took Antles home. Morrow and Forshee, however, did not proceed directly home themselves, instead purchasing a case of beer at a gas station and continuing to use the vehicle.

At approximately 2:00 A.M. on the morning of March 4, a Mattawan police officer observed the

vehicle speeding and signaled the occupants to stop. Instead, the car accelerated and a high-speed chase ensued, covering eighteen miles and attaining speeds ranging from seventy-five to over one hundred miles per hour. The Pefley vehicle and the police cruiser approached a "Y"-type intersection, and the officer began to brake to slow his speed in order to navigate the intersection, but the Pefley vehicle did not brake in time and was unable to stop because of its excessive speed. The car struck an embankment, hit a metal post, was launched, and remained airborne for approximately fifty feet. Both Forshee and Morrow were critically injured in the crash and were subsequently airlifted by air ambulance to Bronson Methodist Hospital.

There was some dispute below concerning whether Morrow or Forshee was driving the vehicle when the chase began and at the time of the accident. Morrow testified that at some point in the evening he turned the vehicle over to Forshee to drive because he was uncomfortable driving a vehicle with a manual transmission. In an earlier deposition, Forshee denied being the driver, though he had previously made a statement to the police in which he admitted driving the vehicle. The officer involved in the chase identified Forshee as the driver. In its findings of fact, the trial court concluded that Forshee was driving at the time of the accident. That finding is not challenged on appeal.

Following the bench trial, the trial court determined that Judy Forshee was liable for the medical expenses both because she had contractually assumed that duty and because of a statutory duty of a parent to pay for a minor child's medical care. The trial court further determined that Mark Forshee was not eligible for no-fault benefits be-

cause he had unlawfully taken the Pefley vehicle. The trial court did, however, reject Michigan Mutual and State Farm's argument that Mark Forshee's injuries were intentionally caused as a result of the reckless nature of his driving. The trial court also found that Mark Forshee was domiciled with his mother and, therefore, had he been entitled to no-fault benefits, Michigan Mutual would have been liable for payment of those benefits.[1]

The parties raise various issues in their respective briefs, addressing those which are relevant to their individual interests. Those issues, however, can be consolidated into three issues to be addressed on appeal: (1) whether Mark Forshee is excluded from receiving no-fault benefits because he was using the vehicle unlawfully and had no reasonable belief that he was entitled to use it, (2) whether the injuries to Mark Forshee were so recklessly sustained as to be intentional within the meaning of the no-fault act, therefore precluding any recovery, and (3) whether the trial court erred in finding that Mark Forshee was domiciled with his mother within the meaning of the no-fault act. The first two issues concern the interests of all the parties, though State Farm has not directly addressed those issues, while the third issue for the most part only concerns the interests of Michigan Mutual and State Farm and then only if it is determined that Mark Forshee is entitled to receive no-fault benefits.

We turn first to the issue whether the trial court erred in determining that Mark Forshee is ex-

---

[1] Michigan Mutual was the automobile insurance carrier for Judy Forshee. State Farm insured the Pefley vehicle. Under the applicable statute, Michigan Mutual was the primary carrier if Mark Forshee resided with Judy Forshee at the time of the accident, while State Farm would have been the responsible carrier if Forshee did not reside with his mother and, therefore, lacked no-fault insurance coverage of his own.

cluded from receiving no-fault benefits under MCL 500.3113(a); MSA 24.13113(a). That statute provides that a person is not entitled to personal protection insurance benefits under the no-fault act for accidental bodily injury if at the time of the accident the person was using a motor vehicle that he had taken unlawfully, unless the person reasonably believed that he was entitled to take and use the vehicle. The trial court determined that Mark Forshee had unlawfully taken the automobile and had no reasonable basis for believing that he was entitled to use the vehicle and, therefore, pursuant to the above statute, he is precluded from receiving personal protection insurance benefits under the no-fault act. We conclude, however, that the trial court erred in determining that Mark Forshee was precluded from obtaining no-fault benefits under that statute.

Under MCL 500.3113(a); MSA 24.13113(a), a person is precluded from receiving personal protection insurance benefits if the person had unlawfully taken the automobile and could not reasonably believe that he was entitled to take and use the vehicle. There has not been a great deal of case law development of what constitutes an unlawful taking under that statute. However, we do find guidance in the decisions that have construed whether a vehicle was taken with consent for purposes of the owner's liability statute, MCL 257.401; MSA 9.2101.

In *Cowan v Strecker,* 394 Mich 110; 229 NW2d 302 (1975), the Court considered the question of what constituted "consent" under the owner's liability statute and interpreted "consent" broadly. In *Cowan,* the defendant had loaned her automobile to an acquaintance, with the specific instruction that the acquaintance not let anybody else drive her car. The acquaintance disobeyed the

restriction and allowed her son to operate the vehicle, with the result being an automobile accident. The Court concluded that the defendant was liable under the owner's liability statute because the vehicle had been used with her consent, even though the borrower of the vehicle had specifically violated the restrictions placed upon the use by the owner in further loaning the vehicle to her son. The Court, after noting that the purpose of the owner's liability statute was to place the risk of damage or injury on the person who has ultimate control of the vehicle, i.e., the owner, noted that such a broad definition of consent is consistent with the purpose of the owner's liability statute:

> Thus, when an owner willingly surrenders control of his vehicle to others he "consents" to assumption of the risks attendant upon his surrender of control regardless of admonitions which would purport to delimit his consent. It must be so, or the statutory purpose would be frustrated. [*Cowan, supra* at 115.]

Of course, the statute involved here is not concerned with placing the liability of the proper party, but, rather, with precluding the receipt of personal protection insurance benefits by someone who has unlawfully taken an automobile. See *Priesman v Meridian Mutual Ins Co,* 441 Mich 60; 490 NW2d 314 (1992). Thus, a person who steals an automobile and becomes involved in a motor vehicle accident cannot receive no-fault medical benefits for the injuries sustained in that accident. Nevertheless, we believe that the broad definition of "consent" employed by the Supreme Court in the owner liability context is of equal applicability here. In *Cowan,* as quoted above, the Court determined that an owner who willingly surrenders

control of his vehicle to others consents to the assumption of the risks attendant upon his surrender of control. That is, the person to whom the vehicle is entrusted may thereafter violate the instructions of the owner, such as loaning the vehicle to another person. More to the point, the implication in *Cowan* is that, when an owner loans his vehicle to another, it is foreseeable that the borrower may thereafter lend the vehicle to a third party and such further borrowing of the vehicle by the third party is, by implication, with the consent of the owner.

Thus, returning to the case at bar, under the reasoning of *Cowan,* Mark Forshee's use of the vehicle at the time of the accident was with the owner's consent inasmuch as the owner, Stanley Pefley, entrusted the vehicle to his son, Thomas, who in turn entrusted the vehicle to Morrow, who finally entrusted it to Forshee. Given this unbroken chain of permissive use, we cannot say that Forshee's taking of the automobile was unlawful. As noted in *Cowan,* the mere fact that the borrower violates the restrictions placed on him by the owner does not negate the fact that the subsequent taking by a third party is, by implication, with the owner's consent. Therefore, even though Stanley Pefley had placed restrictions on the use of the vehicle he entrusted to his son, including the specific restriction that Mark Forshee was not to use the vehicle, the fact that the vehicle was ultimately entrusted to Forshee in violation of those restrictions does not change the fact that the taking and use was with the owner's consent as defined in *Cowan.*

Indeed, in a case which considered MCL 500.3113(a); MSA 24.13113(a), this Court concluded that that statute was inapplicable where an employee, after working hours and without permis-

sion, used a vehicle belonging to his employer for his own purposes. *State Farm Mutual Automobile Ins Co v Hawkeye-Security Ins Co,* 115 Mich App 675; 321 NW2d 769 (1982). The Court noted, however, that the initial taking was not unlawful, and therefore the subsequent unauthorized use or use beyond the restrictions placed on the vehicle was irrelevant under the statute.

In sum, we conclude that because Stanley Pefley had entrusted his automobile to Thomas Pefley, Thomas Pefley was empowered to further entrust the automobile to Morrow, who could in turn entrust the vehicle to Forshee. Thus, Forshee's use of the vehicle at the time of the accident was with the owner's consent and, therefore, was not unlawful within the meaning of the no-fault act.

Additionally, under the statute, it is necessary not only that the taking of the vehicle be unlawful, but also that the person who took the automobile not have a reasonable basis for believing that he could take and use the vehicle. In the case at bar, the trial court focused on the restrictions imposed by Stanley Pefley on his son not to allow others to use the vehicle and specifically the restriction barring Mark Forshee's use of the vehicle. While these facts are certainly relevant and would perhaps even be dispositive had Forshee borrowed the vehicle without anyone's knowledge or consent, it is nevertheless necessary to look at the specific, unique facts that led up to Forshee's driving of the vehicle on the night in question.

Forshee's use of the automobile did not arise in a context where he had merely "borrowed" his friend's automobile for his personal use without the friend's knowledge or permission or even in a context where he took possession of the vehicle contrary to the friend's wishes while on an outing with his friend. Rather, Thomas Pefley had en-

trusted the vehicle to Morrow to drive home, with Pefley's only other option presumably being to have the car impounded and towed and his friends stranded in need of transportation. Thereafter, Morrow turned the vehicle over to Forshee to drive, apparently because he was uncomfortable driving a vehicle with a manual transmission.

We cannot say that it is unreasonable for a person to believe that he can take and use a vehicle where he was a passenger in the vehicle and the driver/owner (or owner's son) is in police custody and wishes the vehicle taken home and the only other available driver is unwilling to drive because he is uncomfortable with the manual transmission. A person in such a position, while understanding that there is a general preclusion to his use of the vehicle, might nonetheless reasonably believe it permissible under those unique circumstances to take and use the vehicle. The fact that the subsequent use of the vehicle was beyond the scope of the entrustment[2] is irrelevant, because the focus is on the taking of the vehicle, not the use. See *State Farm, supra.*

Similarly, the fact that Forshee did not possess a driver's license also does not control resolution of the insurance issue because it is the unlawful nature of the taking, not the unlawful nature of the use, that forms the basis of the exclusion under the statute. In MCL 500.3113; MSA 24.13113, the Legislature excluded from personal protection insurance benefits individuals who unlawfully take motor vehicles and those who have not procured the automobile insurance required under the no-fault act. If the Legislature had desired to also exclude from coverage those individuals who operate a motor vehicle without a

---

[2] I.e., Forshee and Morrow went on a frolic and detour rather than taking the vehicle directly home as instructed by Pefley.

valid operator's permit, it could have included that class of individuals within the purview of the statute. It did not.

We next turn to the question whether Mark Forshee is precluded from recovering personal injury protection benefits under MCL 500.3105; MSA 24.13105. Michigan Mutual presents two theories in this respect. First, it argues that Forshee is not entitled to recover personal protection insurance benefits under MCL 500.3105(1); MSA 24.13105(1) because, at the time of the accident, he was not operating a motor vehicle as a motor vehicle. Michigan Mutual does not argue that the 1981 Plymouth Champ being driving by Forshee at the time of the accident was not, in fact, a motor vehicle. Rather, Michigan Mutual argues that, because Forshee was fleeing and eluding a police officer at the time of the accident, he was not using the motor vehicle as a motor vehicle. However, the cases cited by Michigan Mutual in support of its argument, *Sanford v Ins Co of North America,* 151 Mich App 747; 391 NW2d 473 (1986), and *Peck v Auto-Owners Ins Co,* 112 Mich App 329; 315 NW2d 586 (1982), are not on point.

In *Peck* and *Sanford,* the plaintiffs were riding motorcycles, either as an operator or as a passenger, that were fleeing and eluding a police cruiser at the time of the accident. Thus, the injured parties were not themselves operating or riding in a motor vehicle at the time of the accident. Therefore, in order to recover personal protection insurance benefits under the no-fault act, it was necessary to look to the police cruiser as the motor vehicle. Moreover, the injury would have to arise out of the use of that motor vehicle, the police cruiser, in order for the injured party to be entitled to collect personal protection insurance benefits. In each case, the court concluded that there

was not a sufficient nexus between the police cruiser and the accident to establish that the injury incurred was linked to a motor vehicle. *Sanford, supra* at 751; *Peck, supra* at 334.

In the case at bar, however, Forshee was, in fact, operating a motor vehicle at the time of the accident. Thus, it is not necessary to look to the police cruiser to constitute the motor vehicle to bring this accident within the purview of the no-fault act, but only to the vehicle being operated by Forshee at the time of the accident, namely Pefley's 1981 Plymouth Champ. Thus, Forshee's injuries were a direct result of his use of that automobile, not an indirect result of fleeing from a police cruiser as in *Peck* and *Sanford.* Thus, unlike *Peck* and *Sanford,* in this case Forshee was himself operating a motor vehicle, albeit improperly. However, it must be remembered that personal protection insurance benefits are paid without regard to fault, *Greater Flint HMO v Allstate Ins Co,* 172 Mich App 783, 789; 432 NW2d 439 (1988). Hence the statute is commonly referred to as the no-fault act.

Michigan Mutual also argues that Forshee is precluded from recovery of benefits under MCL 500.3105(4); MSA 24.13105(4), because his injuries were so recklessly sustained as to be intentional within the meaning of that statute. The cited statute does, in fact, exclude from personal protection insurance benefits injuries that are suffered intentionally. Michigan Mutual argues that Forshee's conduct was so reckless as to constitute wanton or reckless conduct that rises to the level of being intentional conduct or constituting an intentional injury. Thus, fleeing and eluding would also be exempted from the no-fault act under this portion of § 3105 of the no-fault act. We disagree.

As this Court explained in *Mattson v Farmers*

*Ins Exchange,* 181 Mich App 419, 424; 450 NW2d
54 (1989), the intentional injury exclusion under
§ 3105(4) requires that the injury be intended, not
that an intentional act gave rise to an injury. In
the case at bar, although Forshee did act inten-
tionally in fleeing and eluding the police, there is
no indication that he intended to be injured as a
result. That is, there is no indiction that Forshee
intended to crash the automobile for the purpose
of injuring himself. Indeed, the evidence indicated
that Forshee braked the car approximately sixty-
three feet from the intersection, but that the car
was unable to stop completely because of the
excessive speed. Thus, it would certainly appear
that Forshee attempted to avoid the accident,
rather than create one.

For the above reasons, we conclude that both of
Michigan Mutual's arguments that Forshee is pre-
cluded from recovering personal protection insur-
ance benefits because he was fleeing and eluding
the police at the time of the accident are without
merit. Because we have also concluded that For-
shee is not precluded from recovering personal
protection insurance benefits because of an unlaw-
ful taking of the vehicle, we determine that the
trial court erred in concluding that Forshee was
not entitled to personal protection insurance bene-
fits under the no-fault act. Therefore, because
Forshee was entitled to payment of personal pro-
tection insurance benefits, it is necessary to ad-
dress the remaining issue, namely whether the
trial court erred in finding that Forshee was domi-
ciled with his mother and, therefore, that Michi-
gan Mutual, rather than State Farm, is liable for
the payment of the personal protection insurance
benefits.

Turning to that question, we are not persuaded
that the trial court erred in concluding that For-

shee was domiciled with his mother. The determination of domicile is a question of fact to be resolved in the trial court, and this Court will not reverse the trial court's determination of that fact unless the evidence clearly preponderates in the opposite direction. *Dobson v Maki,* 184 Mich App 244, 253; 457 NW2d 132 (1990). There are a number of factors to be considered in resolving the question of where a person is domiciled. See *Workman v DAIIE,* 404 Mich 477, 496-497; 274 NW2d 373 (1979); see also *Dobson, supra* at 252. In the case at bar, there are certainly facts that support both the conclusion that Mark Forshee was domiciled with his mother and that he was not domiciled with his mother. The trial court resolved the facts in favor of the conclusion that Mark Forshee was domiciled with Judy Forshee. While there were facts to support the opposite conclusion, we cannot say on review that the evidence clearly preponderated in the opposite direction. Accordingly, we affirm the finding of the trial court.

For the above reasons, we conclude that the trial court erred in determining that Mark Forshee was not entitled to personal protection insurance benefits under the no-fault act, but did correctly resolve that, if he were entitled to benefits, he was domiciled with Judy Forshee for the purpose of determining the priority of payment under the no-fault act. Accordingly, the trial court shall enter the appropriate judgment in favor of Judy Forshee as well as providing for the appropriate reimbursement to Auto Club and resolution of the priority of payment issue.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Judy Forshee and Auto Club may tax costs, being the only parties to have prevailed in full.