HENRY FORD HEALTH SYSTEM
v ESURANCE INSURANCE COMPANY

Docket No. 288633. Submitted May 11, 2010, at Detroit. Decided June 8, 2010, at 9:10 a.m.

> Henry Ford Health System brought an action in the Wayne Circuit Court against Esurance Insurance Company and Citizens Insurance Company of America to recover the cost of Travion Hamilton's medical treatment as a no-fault benefit. Hamilton was severely injured when the stolen motor vehicle in which he was a passenger struck a utility pole. The case against Citizens was dismissed after the court, Prentis Edwards, J., determined that Esurance had no-fault priority over Citizens. Esurance denied liability, asserting that Hamilton, and thus plaintiff, was not entitled to personal protection insurance benefits under MCL 500.3113(a), which excludes from coverage an injured person who "was using a motor vehicle . . . which he or she had taken unlawfully," because he was using the vehicle knowing it had been stolen. Esurance also filed a counterclaim seeking a declaratory judgment that it was not required to pay no-fault benefits to plaintiff. The court denied the parties' cross-motions for summary disposition, and the case proceeded to trial. The jury found that Hamilton was using the vehicle at the time of the accident, that he had unlawfully taken the vehicle, and that he did not reasonably believe that he was entitled to take and use the vehicle. On the basis of these findings, the court granted Esurance its requested declaratory relief and also entered a judgment of no cause of action in favor of Esurance. Plaintiff appealed.

> The Court of Appeals *held*:

> The trial court erred by denying plaintiff's motion for summary disposition because there was no evidence that Hamilton was using a motor vehicle that he had taken unlawfully. MCL 500.3113(a) envisions the completed taking of a motor vehicle, followed by its use during which an accident occurs giving rise to injuries. Hamilton never engaged or participated in an act through which he took possession or gained control of the vehicle, given that he was a mere passenger in a vehicle that had been stolen before his involvement. Hamilton's mere use of the vehicle

as a passenger did not establish that he had taken the vehicle, which is a prerequisite for the exclusion from coverage under MCL 500.3113(a).

Reversed.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — MOTOR VEHICLES — UNLAWFUL TAKING OF A MOTOR VEHICLE.

The no-fault act excludes from entitlement to personal protection insurance benefits for accidental bodily injury a person who at the time of the accident was using a motor vehicle or motorcycle that he or she had taken unlawfully; the exclusion does not apply to situations in which the injured person was merely a passenger in a vehicle that had been stolen before the injured person's involvement; use of the vehicle alone is insufficient; there must be evidence that the injured person engaged or participated in the unlawful taking for the statutory exclusion to apply (MCL 500.3113[a]).

*Foster, Swift, Collins & Smith, P.C.* (by *Paul J. Millenbach*), for Henry Ford Health System.

*Siemion Huckabay, P.C.* (by *Raymond W. Morganti*), for Esurance Insurance Company.

Before: MURPHY, C.J., and K. F. KELLY and STEPHENS, JJ.

MURPHY, C.J. Plaintiff, Henry Ford Health System, provided medical services to Travion Hamilton, who was severely injured when a stolen Jeep Cherokee in which he was a passenger struck a utility pole. Plaintiff filed this action against defendant Esurance Insurance Company, the insurer of the stolen vehicle, to recover the cost of Hamilton's medical treatment as a no-fault benefit.[1] Relying on MCL 500.3113(a), Esurance denied

---

[1] Plaintiff also sued Citizens Insurance Company of America, which had been assigned the case by the Michigan Assigned Claims Facility. After the trial court determined that Esurance had no-fault priority over Citizens, the action against Citizens was dismissed. Citizens is not a party to this appeal.

liability, arguing that Hamilton, and thus plaintiff, was not entitled to no-fault benefits because at the time of the accident Hamilton was using the Jeep knowing it had been stolen.[2] The trial court denied the parties' cross-motions for summary disposition, and the case proceeded to trial. The jury found that Hamilton was using the Jeep at the time of the accident, that he had unlawfully taken the vehicle, and that Hamilton did not reasonably believe that he was entitled to take and use the Jeep. Accordingly, the trial court entered a judgment of no cause of action in favor of Esurance.[3] Plaintiff appeals as of right. We hold that the trial court erred by denying plaintiff's motion for summary disposition because there was an absolute dearth of evidence that Hamilton was using a motor vehicle that "he . . . had taken unlawfully. . . ." MCL 500.3113(a). We thus reverse and remand for entry of judgment in favor of plaintiff.

I. FACTS

The documentary evidence indicated that Hamilton's girlfriend, Chanda Profic, borrowed the Jeep from an acquaintance for a small fee knowing that it was a stolen vehicle. There is no dispute that the Jeep had been stolen from its owner, and there is no claim that Hamilton participated directly in taking the vehicle from the owner. Profic was not provided with keys to operate the vehicle. The Jeep's ignition cylinder had been removed by damaging the housing on the steering column. The door lock on the driver's side was also missing. The vehicle was given to Profic with the engine running, and she did not know

---

[2] Esurance also filed a counterclaim seeking a declaratory judgment that it was not required to pay no-fault benefits to plaintiff.

[3] The trial court also granted Esurance declaratory relief, stating that it was not required to pay no-fault benefits to plaintiff.

how to turn it off or restart it. Profic, who did not have a driver's license or own her own vehicle, later picked up Hamilton in the vehicle, and the two of them drove around and used the vehicle for three to five hours. During this period, Profic and Hamilton stopped several times to visit friends or to go inside a store. They would leave the Jeep unattended with the engine running during these stops. During one stop, a friend turned the engine off and had to restart the vehicle for Profic because she did not know how to start it without a key. Hamilton never operated or drove the Jeep, but simply rode along as a passenger. Profic and Hamilton were later involved in an accident when the vehicle struck a utility pole, causing severe and permanent injuries to Hamilton. Hamilton did not have any automobile insurance of his own.

The trial court entertained cross-motions for summary disposition in which the parties presented a variety of arguments, including plaintiff's argument that there was no evidence that Hamilton himself had taken the vehicle unlawfully and, thus, the no-fault coverage exclusion of MCL 500.3113(a) was not implicated. The trial court denied the motions, finding that there were genuine issues of material fact that precluded summary disposition in favor of either party. The case proceeded to trial, and a judgment of no cause of action predicated on the jury's verdict was entered. As noted, the jurors found that Hamilton was using the Jeep at the time of the accident, that he had unlawfully taken the vehicle, and that Hamilton did not reasonably believe that he was entitled to take and use the Jeep. Plaintiff appeals as of right.

## II. ANALYSIS

Plaintiff argues, in part, that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(10) because it was entitled to its claim for

payment as a matter of law given that there was a complete absence of evidence that Hamilton himself had taken the stolen vehicle, let alone taken it unlawfully. We agree.

A. STANDARD OF REVIEW AND PRINCIPLES
GOVERNING MCR 2.116(C)(10)

This Court reviews de novo a trial court's decision on a motion for summary disposition. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Also reviewed de novo are issues of statutory interpretation. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006).

MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's cause of action. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996), citing MCR 2.116(G)(4) and (5). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. A court may only consider "substantively admissible evidence actually proffered" relative to a motion for summary disposition under MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). The trial court is not

permitted to assess credibility, to weigh the evidence, or to determine the facts, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Skinner*, 445 Mich at 161; *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 437; 695 NW2d 84 (2005).

### B. PRINCIPLES OF STATUTORY CONSTRUCTION

In *Zwiers v Growney*, 286 Mich App 38, 44; 778 NW2d 81 (2009), this Court set forth the well-established principles of statutory construction:

> Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. In ascertaining legislative intent, this Court gives effect to every word, phrase, and clause in the statute. We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. This Court must avoid a construction that would render any part of a statute surplusage or nugatory. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. If the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [Citations and quotation marks omitted.]

### C. DISCUSSION

Under the no-fault act, MCL 500.3101 *et seq.*, and with respect to personal protection insurance (PIP) benefits, "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, op-

eration, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of [the act]." MCL 500.3105(1). With regard to PIP benefits, they are payable for, in part, "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Esurance argues that Hamilton was barred from recovering no-fault PIP benefits under MCL 500.3113(a), which provides:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was using a motor vehicle or motorcycle *which he or she had taken unlawfully*, unless the person reasonably believed that he or she was entitled to take and use the vehicle. [Emphasis added.]

Plaintiff argues that Hamilton never engaged in the act of taking the Jeep from anyone; rather, it had already been taken by the time he hopped into the vehicle and rode along as a passenger.

Addressing the language of MCL 500.3113(a), this Court observed in *Amerisure Ins Co v Plumb*, 282 Mich App 417, 425; 766 NW2d 878 (2009):

> Thus, PIP benefits will be denied if the taking of the vehicle was unlawful and the person who took the vehicle lacked "a reasonable basis for believing that he [or she] could take and use the vehicle." *Bronson Methodist Hosp v Forshee*, 198 Mich App 617, 626; 499 NW2d 423 (1993). When applying § 3113(a), the first level of inquiry will always be whether the taking of the vehicle was unlawful. If the taking was lawful, the inquiry ends because § 3113(a) does not apply.

We would add that the inquiry into whether MCL 500.3113(a) is implicated must also necessarily entail

ascertaining whether the injured individual seeking coverage took the vehicle or engaged in the taking of the vehicle.

The terminology "taken" or "had taken," as used in MCL 500.3113(a), is not defined in the statutory scheme. With respect to statutory language, "[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language." MCL 8.3a. The word "taken" is the past participle of "take." In *Plumb*, the panel construed the word "take" as found in the "take and use" clause of MCL 500.3113(a).[4] *Plumb*, 282 Mich App at 428. The Court stated that "take" means to get something into one's hands or possession through a voluntary action. *Id*. This would necessarily involve either a transfer of possession or control of an object from one person to another or the gaining of possession or control of an unattended object that is not in anyone's control or possession. And the words "had taken" reflect a past or completed action. Accordingly, MCL 500.3113(a) envisions an accomplished or completed taking of a motor vehicle followed by its use during which an accident occurs giving rise to injuries.

Hamilton never engaged or participated in an act through which he took possession or gained control of the Jeep. There was no act transferring possession or control of the Jeep from Profic or others to Hamilton, nor did Hamilton take possession or control of a vehicle that was unattended and not within anyone's control or possession. He never took the Jeep from anyone or anyplace. On the evidence presented, we cannot find that he "had taken" the vehicle, let alone that he took it

---

[4] In MCL 500.3113(a), the exclusion bars a person from recovering PIP benefits "unless the person reasonably believed that he or she was entitled to *take and use* the vehicle." (Emphasis added.)

unlawfully. Rather, the thief who directly took the Jeep away from the owner, or possibly Profic, would most accurately be described as having taken the vehicle, and Hamilton then merely joined in relative to the "use" of the Jeep—a Jeep that had already been taken. The taking had been completed by the time Hamilton came into the picture, and he never thereafter took control or possession of the vehicle away from Profic.

One might argue that Hamilton aided and abetted Profic or the initial thief in an ongoing taking such that it could be said that he "had taken" the Jeep. However, this argument would circumvent the statutory language and is inconsistent with the words "had taken," which reflect a completed act. Once Profic or the initial thief took or gained control and possession of the Jeep, the taking was completed. The ongoing-taking argument would also be inconsistent with the separate treatment in MCL 500.3113(a) of the words "using" and "taken." Again, MCL 500.3113(a) precludes the recovery of PIP benefits when the person seeking those benefits "*was using* a motor vehicle or motorcycle which he or she *had taken* unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle." (Emphasis added.) Certainly, there can be no reasonable dispute that Hamilton was using or making use of the Jeep as a passenger for purposes of transportation when the accident occurred, but, for the reasons stated earlier, he was not involved in the taking of the vehicle. Had the Legislature intended to preclude the receipt of benefits by an injured person under the circumstances presented here, it could simply have provided that PIP benefits are not recoverable by a person who was using a motor vehicle "which he or she had taken *or was using* unlawfully." Stating that a person "had taken" a vehicle is not synonymous with saying that a person "had used" the vehicle; the terms

have different meanings. Indeed, this is reflected in the language of the statute itself: MCL 500.3113(a) provides that the exclusion of coverage does not apply in situations in which the person "reasonably believed that he or she was entitled to *take and use* the vehicle." (Emphasis added.) This language shows that a person must both take and use a vehicle. This understanding is consistent with the preceding language in MCL 500.3113(a) that refers to "using" a vehicle that a person "had taken." Hamilton used the Jeep, but he did not take the Jeep.

Our construction is in accord with the *Plumb* panel's discussion of the "take and use" clause:

> *Random House Webster's College Dictionary* (1997) defines the word "take" as "to get into one's hands or possession by voluntary action" and the word "use" as "to employ for some purpose; put into service[.]" Clearly, the terms "take" and "use" are not interchangeable or even synonymous; obtaining possession of an object is very different from employing that object or putting it into service. The term "and" is defined as a conjunction, and it means "with; as well as; in addition to[.]" When given its plain and ordinary meaning, the word "and" between two phrases requires that both conditions be met. . . . Construing the word "and" as a conjunction does not give the text of § 3113(a) a dubious meaning. On the contrary, it is clear that it requires a driver who obtains a vehicle unlawfully to have (1) a reasonable belief that he or she was entitled to *take* the vehicle and (2) a reasonable belief that he or she was entitled to *use* the vehicle. The statute does not contain any clear legislative intent that the term "and" was meant to be applied as providing a choice or alternative between taking the vehicle and using the vehicle. . . . Therefore, in circumstances in which the vehicle was unlawfully taken, the injured party may obtain PIP benefits only if it can be shown (1) that the injured party reasonably believed that he or she was entitled to take the vehicle *and* (2) that the injured party reasonably believed that he or she was

entitled to use the vehicle. [*Plumb*, 282 Mich App at 428-429 (citations omitted; alterations in original).]

Accordingly, Hamilton's mere use of the vehicle as a passenger did not establish that he "had taken" the vehicle, which is a prerequisite for imposition of the coverage exclusion in MCL 500.3113(a). The vehicle must be one that the injured person was "using" *and* one that the injured person "had taken." The evidence presented in this case established use, not a taking.

The caselaw does not conflict with our resolution of this case. In *Mester v State Farm Mut Ins Co*, 235 Mich App 84; 596 NW2d 205 (1999), three young girls skipped school and went looking for a vehicle with keys in it so that they could take the vehicle and drive away from the area. The Court described what happened next:

Amanda . . . found a truck parked with keys inside and got into the driver's seat. Jessica[5] got into the passenger seat, Edelfina got into the back seat, and Amanda drove the vehicle away.

The girls used the truck to go to the upper peninsula, stopping occasionally to purchase gas and to take turns driving the truck in a field. After running out of money, the girls used the truck to return to the lower peninsula on I-75 and headed back toward Cass City. At approximately 1:00 A.M. on the morning of March 25, the girls were spotted in the truck by a police officer in the village of Reese. A chase ensued, and Amanda refused to pull over despite the pleas of Edelfina and Jessica for her to stop. The truck went out of control during the chase, resulting in a roll-over collision that killed Edelfina and injured Jessica and Amanda. [*Id.* at 85-86.]

The plaintiff filed suit against State Farm Mutual Insurance Company, seeking to recover no-fault PIP

---

[5] The lawsuit was pursued by Jessica's mother as her next friend. *Mester*, 235 Mich App at 85-86.

benefits, and the trial court granted State Farm's motion for summary disposition, finding "that there was no question of fact that Jessica was actively involved in unlawfully taking the truck and driving it away." *Id.* at 86. This Court affirmed, holding:

> An unlawful taking does not require an intent to permanently deprive the owner of the vehicle to constitute an offense. Indeed, the offense of unlawfully driving away a motor vehicle, MCL 750.413; MSA 28.645, a felony commonly referred to as "joyriding," requires an intent to take or drive the vehicle away but not to steal the vehicle. The offense requires the specific intent to take possession of the vehicle unlawfully, and punishes conduct that does not rise to the level of larceny where an intent to permanently deprive the owner of the property is lacking. Had the Legislature intended to exempt from subsection 3113(a) all joyriding incidents, it would have chosen a different term than "unlawful taking," such as "steal" or "permanently deprive." Instead, the Legislature chose a term that encompasses the offense of joyriding. As explained above, the justices of the Supreme Court who recognized a joyriding exception in the *Priesman*[6] case did so not because joyriding does not involve an unlawful taking, but only because of special considerations attendant to the joyriding use of a family vehicle by a family member. Those considerations do not warrant expansion of the exception beyond the family context.
>
> Here, on the basis of Jessica's deposition testimony, there is no question of fact that Jessica participated in the unlawful taking of the truck, without permission and without any reason to believe that she was entitled to take or use the truck. On these undisputed facts, the clear intent of the Legislature was to deny the payment of no-fault PIP benefits. Hence, summary disposition was properly granted under MCR 2.116(C)(10). [*Id.* at 88-89 (citations omitted).]

---

[6] *Priesman v Meridian Mut Ins Co*, 441 Mich 60; 490 NW2d 314 (1992).

As is readily apparent, *Mester* is distinguishable from the facts here because Jessica actually participated in the act of taking the parked truck, along with the two other girls, and once they had taken the vehicle, she was injured while using the truck. Jessica engaged or participated in an act through which she and the others took possession or gained control of the unattended truck. That was simply not the case in the instant action.

With respect to the joyriding discussion in *Mester*, it does not have any implication here because the discussion was focused on the question whether the taking was unlawful, not on whether there was a taking in the first place. While Hamilton may well indeed have been guilty of joyriding under MCL 750.414 for the unauthorized use of the Jeep, MCL 500.3113(a) requires a taking by the person seeking PIP benefits, not mere use.

In *Plumb*, 282 Mich App 417, this Court held that summary disposition in favor of the no-fault insurer was proper because the injured motorist seeking PIP benefits, Plumb, unlawfully took the vehicle involved in the underlying accident and did not have a reasonable belief that she was entitled to use the vehicle within the meaning of MCL 500.3113(a). The Court described the facts of the case as follows:

> Plumb arrived at a bar near Caro, Michigan, about 11:30 p.m. one evening, socializing and consuming alcohol with several men. A couple of hours later, David Shelton drove a Jeep Cherokee to the same bar and parked it in the parking lot. Shelton did not maintain insurance on the Jeep, and although he had entered into an agreement to purchase the Jeep several months earlier, he was not the titled owner. Shelton left his keys in the Jeep, and he did not usually lock his car doors. Plumb and Shelton did not know one another, and during the time they were both in the bar,

they never spoke to one another. Shelton did not give Plumb the keys or permission to drive the Jeep, and she did not receive the keys or permission from the titled owner. Plumb left the bar with two men, one of whom she described as Caucasian and wearing a baseball cap and a goatee. Plumb claimed that the unidentified man with the baseball cap and goatee handed her the keys to the Jeep and asked her to drive because he was on probation. Plumb, who did not maintain automobile insurance and did not reside with a relative who carried automobile insurance, was intoxicated, and her driver's license had been suspended. Shelton left the bar shortly after Plumb and discovered that the Jeep was missing.

Later that morning, Plumb was found lying in a field near the bar, having sustained severe burn injuries. In a deep drainage ditch about 250 yards away from Plumb, the police found Shelton's Jeep, which had been totally consumed by fire. Plumb suffers from a closed-head injury and posttraumatic stress disorder and does not recall all the events leading up to the accident or the accident itself. The police determined that the Jeep had been driven away from the bar across a mowed field and an unmowed hayfield, struck an electric transformer, and ultimately crashed into the drainage ditch. In the mowed field near the parking lot, there were several other sets of tire tracks. The police concluded that Plumb had been driving the Jeep and was its sole occupant. [*Id.* at 420-421.]

*Plumb* is distinguishable from the facts here because it was uncontested that Plumb engaged or participated in an unlawful taking when she took possession or gained control of the vehicle and drove it away. Here, again, Hamilton never took the Jeep.

In *Butterworth Hosp v Farm Bureau Ins Co*, 225 Mich App 244, 246; 570 NW2d 304 (1997), the injured person for whom PIP benefits were sought "telephoned his mother at work, asked her permission to use her car, and she refused. Nevertheless, [he] took the car keys from his parents' mobile home, drove the car, and was

involved in an accident in which he sustained injuries . . . ." In *Bronson Methodist Hosp*, 198 Mich App at 620-621, the injured person seeking PIP benefits had taken possession and control of a vehicle that had earlier been driven by a friend, who had taken over the driving from yet another friend, who in turn had been stopped and arrested on a probation violation. In *Landon v Titan Ins Co*, 251 Mich App 633, 635-636; 651 NW2d 93 (2002), the injured person seeking PIP benefits drove off in a vehicle owned by a friend who, by agreement, had parked the car on the injured person's property for the purpose of selling it. In *Butterworth Hosp* and *Bronson Methodist Hosp*, this Court ultimately held that the insured motorists were entitled to PIP benefits, and in *Landon*, this Court held that the trial court erred as a matter of law by finding that the injured person unlawfully took her friend's vehicle. *Landon*, 251 Mich App at 642-643; *Butterworth Hosp*, 225 Mich App at 249; *Bronson Methodist Hosp*, 198 Mich App at 631. But even had the panels ruled against the injured motorists, the cases clearly involved injured persons who "had taken" a motor vehicle, which was not the case here.

It is certainly arguable, on a practical level, that it makes little sense to distinguish between a thief or joyrider who directly participates in the taking of a motor vehicle and a person who, while not involved in the taking of the vehicle, later uses the vehicle for his or her benefit knowing it had been stolen. It is clear that the Legislature in drafting the statute was focused on the person or persons engaged in taking a motor vehicle for purposes of the PIP-benefits exclusion, apparently without contemplating scenarios in which other persons may also have been involved in criminal activity associated with the use of the vehicle. We cannot, however, go beyond the words of MCL 500.3113(a). If

the Legislature desires to preclude an award of PIP benefits to persons engaged in criminal activity who did not take a motor vehicle, it is for the Legislature to amend the statute. It is certainly not within our authority to do so.

### III. CONCLUSION

The trial court erred by denying plaintiff's motion for summary disposition under MCR 2.116(C)(10) because there was no evidence that Hamilton was using a motor vehicle that "he . . . had taken unlawfully. . . ." MCL 500.3113(a). In light of our ruling, it is unnecessary to reach plaintiff's alternative arguments.

Reversed and remanded for entry of judgment in favor of plaintiff. We do not retain jurisdiction. Having prevailed in full, plaintiff is awarded taxable costs pursuant to MCR 7.219.