# Order

Michigan Supreme Court
Lansing, Michigan

May 6, 2011

141571

FARMERS INSURANCE EXCHANGE,
   Plaintiff-Appellee,

v

RUFUS YOUNG,
   Defendant-Appellant,

and

NICOLE WILLIAMS and LINDA LEE,
   Defendants.

_____/

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

SC: 141571
COA: 275584
Wayne CC: 06-601127-NF

On March 10, 2011, the Court heard oral argument on the application for leave to appeal the August 3, 2010 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J. (*concurring*).

I concur in the Court's order denying leave to appeal, but write separately because I would refine the holding of *Amerisure Ins Co v Plumb*, 282 Mich App 417 (2009), concerning the proper analysis for determining whether a claimant is precluded from obtaining personal protection insurance (PIP) benefits under MCL 500.3113(a).

MCL 500.3113(a) provides an exclusion for PIP benefits in circumstances in which "[t]he person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle." Based on this language, *Plumb* correctly stated that "[w]hen applying § 3113(a), the first level of inquiry will always be whether the taking of the vehicle was unlawful. If the taking was lawful, the inquiry ends because § 3113(a) does not apply." 282 Mich App at 425. "An unlawful taking does not require an intent to permanently deprive the owner of the vehicle to constitute an offense." *Mester v State Farm Mut Ins*

*Co*, 235 Mich App 84, 88 (1999). Rather, an unlawful taking may occur where a person has taken a vehicle "without authority." MCL 750.413; MCL 750.414. However, *Plumb* did not expressly identify *whose* authority must be lacking for the purposes of § 3113(a). To the extent that it is necessary to do so, I would clarify that, at least in my judgment, this provision is focused on the authority of the *owner* of the vehicle, not the state of Michigan. That is, for the purposes of § 3113(a), a vehicle may be "unlawfully taken" where it is taken without the authority of its owner, not where a person has taken the vehicle without a valid driver's license, the requisite insurance, or in violation of some other provision of the Motor Vehicle Code.

*Plumb* also properly recognized that once an "unlawful taking" has been established, the "next step in [the] analysis is to determine whether [the claimant] 'reasonably believed that . . . she was entitled to *take* and *use* the vehicle.'" 282 Mich App at 427. The statute makes clear that at this stage the determinative question is whether a claimant's belief was "reasonable." Whether the use was "legal" will often be a highly relevant factor in making this determination, but may not control in every case. For instance, different considerations might attach in an emergency; in such a circumstance, the illegal operation of a vehicle may not always, "as a matter of law," *id*. at 431, preclude a finding of a "reasonable belief" to use the vehicle under § 3113(a), as it did in *Plumb*.

In sum, § 3113(a) requires a threshold determination that a vehicle was "unlawfully taken" from its *owner*. If this threshold showing is made, the next step in the analysis looks to whether the claimant had a *reasonable* belief that he or she was entitled to "take," and to "use," the vehicle. This analytical framework is compelled by § 3113(a), and should aid in alleviating the legitimate concerns of the dissenting Court of Appeals judge in *Plumb* and in this case.

MARILYN KELLY, J. (*dissenting*).

I respectfully dissent from the Court's order denying plaintiff's application for leave to appeal. I believe that the Court of Appeals majority erred in concluding that MCL 500.3113(a) prevents defendant from obtaining no-fault benefits. Section 3113(a) denies coverage to individuals who unlawfully take a vehicle, not to those who unlawfully use a vehicle. Since defendant did not unlawfully take the vehicle involved in this case, § 3113(a) does not preclude him from receiving no-fault benefits.

FACTS & PROCEDURAL HISTORY

This case arises out of an automobile accident. Nicole Williams owned an uninsured 2001 Kia which became involved in an automobile accident. Before the accident, Williams enlisted Lynda Lee, her cousin, to stay at her house and take care of her seven-year-old son Jalen while Williams went on a vacation. Before leaving, Williams told Lee that the Kia was uninsured. She testified that she assumed Lee would

understand that to mean that she should not drive the car. She testified that her agreement with Lee to stay at her house and care for Jalen did not require Lee to use an automobile. There was food in the house, and Jalen's school was within walking distance.

Williams' sister, Cynthia Hughes, drove Williams to the airport when she departed on vacation. Williams testified that Hughes did not use the Kia for this trip. However, Lee disagreed. She testified that Hughes drove Williams to the airport in the Kia while she and Jalen stayed at Hughes' home. Lee further testified that, when Hughes returned from the airport, she turned the keys to the Kia over to Lee and told her to return the auto to Williams' home. It is undisputed that the keys to the Kia were left in Lee's possession.

On the night of the accident, Lee testified, she drove the Kia to a party store to buy beer and took Jalen with her, then drove with him to defendant Rufus Young's workplace. Young worked in a duplex doing plumbing, electrical, and drywall repair. He also lived on the premises. Lee testified that she sat on the porch and drank either two or three 40-ounce malt liquors while Jalen rode his bike. When she returned to the car, she and Young agreed that she was not fit to drive.

Young testified that, even though Lee was intoxicated, he could not allow her and Jalen to stay at the duplex. He was concerned that his landlord would object. He wanted Lee to leave but did not want her to drive in her intoxicated condition. Thus, he agreed to drive Lee and Jalen to Williams' home, even though his driver's license had been suspended.

Young acknowledged that he did not receive permission from Williams to drive the Kia before she left for her vacation. He testified in his deposition that, in light of his past driving record, Williams probably would not have allowed him to use the Kia. At trial, however, he testified that he thought that Williams would have approved of his driving the vehicle in light of Lee's intoxication. Young had no knowledge of whether Lee had permission to drive the Kia.

While Young was driving to Williams' home with Lee and Jalen as passengers, the Kia collided with another automobile, injuring Lee and Young, and killing Jalen. The driver of the other car was issued a traffic citation, whereas Young received no citation for the accident.

None of the individuals or vehicles involved in the accident was insured. Young's request for personal protection insurance (PIP) benefits was assigned to plaintiff Farmers Insurance Exchange. Farmers sought a declaratory judgment in circuit court. It claimed that it could deny benefits to Young under MCL 500.3113(a) because he had used Williams' vehicle without her consent. It argued that, because Young had no operator's license, he lacked a reasonable belief that he was entitled to use the vehicle.

After a bench trial, the judge granted declaratory relief to Farmers. It ruled that Young was ineligible for PIP benefits under MCL 500.3113(a) because he was unlicensed and therefore not lawfully entitled to drive the vehicle. The Court of Appeals affirmed, with Judge O'Connell dissenting. Defendant Young sought leave to appeal, and this Court ordered oral argument on his application.[1]

ANALYSIS

MCL 500.3113 provides, in relevant part:

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.

The two clauses of MCL 500.3113(a) must be separated. First, the statute provides that someone is not entitled to PIP benefits if "[t]he person was using a motor vehicle which he or she had taken unlawfully." Thus, a person will be excluded from benefits if he or she unlawfully takes a vehicle and is injured in an accident.

Second, the statute contains a savings clause: "unless the person reasonably believed that he or she was entitled to take and use the vehicle." Thus, a person who takes a vehicle unlawfully is entitled to PIP benefits if he or she reasonably believes himself or herself entitled to take the vehicle. The savings clause has significance only when a vehicle is unlawfully taken. It does not come into play if the vehicle was taken lawfully; it does not serve as an alternate ground upon which to deny PIP benefits.

Furthermore, the statute does not, nor was it intended to, address whether the *use* of the motor vehicle was legal. It does not require lawful operation of a motor vehicle in order for an individual to obtain PIP benefits. As previously noted by the Court of Appeals, "it is the unlawful nature of the taking, not the unlawful nature of the use, that is the basis of exclusion under [MCL 500.3113(a)]."[2] Indeed, Judge O'Connell's dissent in this case illustrates the absurdity of denying PIP benefits under § 3113(a) if the vehicle was unlawfully operated:

---

[1] 488 Mich 980 (2010).

[2] *Butterworth Hosp v Farm Bureau Ins Co*, 225 Mich App 244, 250 (1997).

> [A] requirement that one must "legally use" or "lawfully operate" a motor vehicle before one can collect no-fault benefits would defeat the purpose of purchasing insurance. . . . [M]any motorists would be surprised to learn that they would not be entitled to PIP benefits if they caused an accident by, for example, running a red light or speeding, or if they had a suspended or expired license at the time of an accident.[3]

Moreover, inserting a "lawful use" requirement into § 3113(a) defeats an objective of the no-fault act, which is to provide benefits to those who are involved in automobile accidents, regardless of fault.

The controlling issue in this case is whether Young unlawfully took the vehicle. The phrase "taken unlawfully" is not defined in the no-fault act. However, it clearly contemplates that the vehicle must have been taken in violation of a statute or ordinance. In my view, Young did not have the requisite criminal intent to violate a statute in taking the vehicle because he had implied consent through Lee to use it at the time of the accident.

The question whether an individual violated a statute in taking a vehicle must be viewed from the perspective of the person taking the vehicle. This approach is mandated because statutes pertaining to the unlawful taking of a vehicle, such as MCL 750.413 or MCL 750.414, contain an element of intent.

In the case at hand, defendant Young neither had the intent to steal nor to joyride when he drove Lee back to her cousin's home. When Lee showed up at his place of work in the vehicle with its owner's son in tow, she appeared to have the authority to drive the vehicle.

Furthermore, the facts of this case indicate that there was an unbroken chain of permissive entrustment extending from Williams to Young. Williams, the owner of the vehicle, gave the car keys to Hughes, who in turn gave them to Lee. Or Williams gave them directly to Lee. Thus, Lee had lawful possession of the Kia when she drove to Young's place of work. Lee then gave Young permission to operate the vehicle, because she was intoxicated. Since Lee was in lawful possession of the vehicle, the consent to her use flowed to Young when she allowed him to drive.

---

[3] *Farmers Ins Exchange v Young*, unpublished opinion per curiam of the Court of Appeals, issued August 3, 2011 (Docket Nos. 275584 and 283865) slip op. at 5, n 5 (O'Connell, J. dissenting).

It is undisputed that Williams never denied Lee permission to operate her vehicle. She merely informed Lee that the vehicle was uninsured. Williams may have intended that Lee use the vehicle only in an emergency. However, the fact that Lee may have exceeded the scope of intended use of the vehicle is irrelevant to the determination of whether Young had the owner's implied consent to use it. The use of a motor vehicle in violation of restrictions placed on its use by its owner when entrusting it to others does not necessarily equate with an unlawful taking. So long as there is an unbroken chain of permissive entrustment that extends back from the vehicle operator to the owner, there is no unlawful taking.[4]

Because Young had implied consent to drive the vehicle, he cannot be said to have taken it unlawfully. Thus, MCL 500.3113(a) does not preclude him from obtaining PIP benefits. Even assuming arguendo that Young unlawfully took the vehicle, I would still conclude that he is entitled to PIP benefits pursuant to the savings clause of MCL 500.3113(a). Notwithstanding the fact that Young did not have a valid driver's license, under the facts of this case, his belief that he was entitled to take and use the vehicle was reasonable.

For these reasons, I would reverse the judgment of the Court of Appeals, vacate the declaratory judgment, and remand the case for further proceedings.

HATHAWAY, J., would grant leave to appeal.

ZAHRA, J., did not participate because he was on the Court of Appeals panel.

---

[4] *Bronson Methodist Hosp v Forshee*, 198 Mich App 617 (1993).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 6, 2011

p0503

Clerk