RAMBIN v ALLSTATE INSURANCE COMPANY

Docket No. 305422. Submitted July 13, 2012, at Detroit. Decided August 30, 2012, at 9:00 a.m. Leave to appeal sought.

Lejuan Rambin brought an action in the Wayne Circuit Court against Allstate Insurance Company and Titan Insurance Company, seeking payment of no-fault automobile insurance benefits. Plaintiff was injured while operating a stolen motorcycle. Plaintiff had obtained the motorcycle from Andre Smith, who was not the owner. Smith had told plaintiff that he had an extra motorcycle that plaintiff could borrow in order to attend a social event. When plaintiff arrived at Smith's home, Smith gave him the keys to the stolen motorcycle. Plaintiff was injured when he was driving the motorcycle back to Smith's home after the event. Both defendants moved for summary disposition, asserting that plaintiff's claim was barred by the unlawful-taking exclusion, MCL 500.3113(a). The court, Susan D. Borman, J., agreed and granted the motions. Plaintiff appealed.

The Court of Appeals *held*:

Under MCL 500.3113(a), a person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident the person was using a motor vehicle or motorcycle that he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle. Determining the applicability of this statute involves two levels of inquiry: (1) determining whether the taking was unlawful, which entails ascertaining whether the injured individual seeking coverage took the vehicle or engaged in the taking of the vehicle, and (2) if the vehicle was taken unlawfully, determining whether the injured person reasonably believed that he or she was entitled to take and use the vehicle. If the taking was lawful, the MCL 500.3113(a) coverage exclusion does not apply. The statute examines the legality of the taking from the driver's perspective. For a claimant to have taken a vehicle unlawfully, (1) the vehicle must have been taken, (2) the taking of the vehicle must have been unlawful, (3) it must have been the injured claimant who took the vehicle unlawfully, and (4) the injured person must therefore have both taken the vehicle and acted

unlawfully in doing so. An unlawful taking requires some action by the end user of the vehicle contrary to the Michigan Penal Code. In this case, plaintiff did not take the motorcycle in violation of the Michigan Penal Code and he had every reason to believe that he had obtained the vehicle from its rightful owner. Notably, there were no countervailing considerations such as intoxication or joint conduct with the person who actually took the motorcycle from its rightful owner. Under the circumstances, the trial court improperly granted summary disposition for the defendants because there was no unlawful taking under MCL 500.3113(a). There was, therefore, no need to reach the issue whether plaintiff reasonably believed that he was entitled to take and use the vehicle.

Reversed and remanded for further proceedings.

RONAYNE KRAUSE, J., concurring in part and dissenting in part, concurred with the majority's application of *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503 (2012), to the facts of the case and with the relief ordered, agreeing that plaintiff did not take the motorcycle unlawfully. Judge RONAYNE KRAUSE dissented from the majority's analysis of caselaw decided before *Spectrum Health*, concluding that the analysis was unnecessary to a decision in the case.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — COVERAGE EXCLUSIONS — UNLAWFUL TAKING OF MOTOR VEHICLES — WORDS AND PHRASES — UNLAWFUL TAKING.

Under the unlawful-taking exclusion of the no-fault automobile insurance act (MCL 500.3113[a]), a person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident the person was using a motor vehicle or motorcycle that he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle; determining the applicability of this statute involves two levels of inquiry: (1) determining whether the taking was unlawful, which entails ascertaining whether the injured individual seeking coverage took the vehicle or engaged in the taking of the vehicle, and (2) if the vehicle was taken unlawfully, determining whether the injured person reasonably believed that he or she was entitled to take and use the vehicle; if the taking was lawful, the unlawful-taking coverage exclusion does not apply; for a claimant to have taken a vehicle unlawfully, (1) the vehicle must have been taken, (2) the taking of the vehicle must have been unlawful, (3) it must have been the injured claimant who took the vehicle unlawfully, and (4) the injured person must therefore have both taken the vehicle and acted unlawfully in doing so; an

unlawful taking under the coverage exclusion requires some action
by the end user of the vehicle contrary to the Michigan Penal Code.

*Donald M. Fulkerson* and *Bruce K. Pazner* for Lejuan
Rambin.

*Charles E. Griffiths* for Allstate Insurance Company.

Before: DONOFRIO, P.J., and RONAYNE KRAUSE and
BOONSTRA, JJ.

BOONSTRA, J. Plaintiff, Lejuan Rambin, appeals as of
right a circuit court order granting summary disposi-
tion to defendants Allstate Insurance Company and
Titan Insurance Company in this action for no-fault
automobile insurance benefits arising from a collision
that occurred while plaintiff was operating a motor-
cycle. We reverse and remand for further proceedings.

### I. BASIC FACTS AND PROCEDURAL HISTORY

The material facts are undisputed. Scott Hertzog
owned a motorcycle. The motorcycle was stolen on
August 4, 2009. On August 22, 2009, Andre Smith told
plaintiff that he had an extra motorcycle that plaintiff
could ride for a motorcycle club event. Plaintiff went to
Smith's house and Smith gave him the keys to Hert-
zog's stolen motorcycle. Smith told plaintiff that he
owned the motorcycle and that plaintiff could use it for
the scheduled event at 10:00 p.m. Plaintiff used the
motorcycle to attend the social function. While driving
the motorcycle to return it to Smith's house, plaintiff
collided with a car and was injured.[1]

---

[1] At the time, plaintiff's Tennessee driver's license had been suspended,
and plaintiff had not obtained a valid Michigan license. Plaintiff testified
at his deposition that he was aware at the time of the accident that he did
not possess a valid license to operate a motorcycle.

Plaintiff filed this action for recovery of no-fault benefits, naming as defendants Allstate, the insurer of a motor vehicle owned by Hertzog, and Titan, which was assigned the claim by the Assigned Claims Facility pursuant to MCL 500.3172.[2] Both defendants moved for summary disposition. Applying what it believed to be controlling caselaw, the trial court agreed that plaintiff's claim was barred by MCL 500.3113(a), and granted defendants' motions.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We conclude, on the basis of our review of the text of MCL 500.3113(a) and the applicable caselaw, that the trial court erred by finding that defendants were entitled to summary disposition. Rather, we find that, under the circumstances presented, plaintiff did not take the motorcycle "unlawfully" within the meaning of MCL 500.3113(a), and that defendants therefore were not entitled to judgment as a matter of law under MCR 2.116(C)(10). Although we conclude that the trial court erred, we note that the error is understandable in light of the tortured path taken in the development of the relevant caselaw as explained later in this opinion.

## II. MICHIGAN NO-FAULT EXEMPTION

Plaintiff challenges the trial court's ruling that MCL 500.3113(a) bars his recovery of no-fault benefits. MCL 500.3113 provides, in pertinent part:

---

[2] It appears from the record that the motor vehicle with which plaintiff collided was uninsured. Third-party defendant AAA of Michigan, the insurer of a relative with whom plaintiff resided, was added to the case by defendant Allstate, as a potential higher-priority insurer, pursuant to MCL 500.3114(5)(c). However, the parties ultimately stipulated to AAA's dismissal, and AAA is not a party to this appeal.

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was using a motor vehicle or motorcycle *which he or she had taken unlawfully,* unless the person reasonably believed that he or she was entitled to take and use the vehicle. [Emphasis added.]

The applicability of this statute involves two inquiries. "[T]he first level of inquiry will always be whether the taking of the vehicle was unlawful." *Amerisure Ins Co v Plumb,* 282 Mich App 417, 425; 766 NW2d 878 (2009). This inquiry "necessarily entail[s] ascertaining whether the injured individual seeking coverage took the vehicle or engaged in the taking of the vehicle." *Henry Ford Health Sys v Esurance Ins Co,* 288 Mich App 593, 599; 808 NW2d 1 (2010).[3] "If the taking was lawful, the inquiry ends because § 3113(a) does not apply." *Plumb,* 282 Mich App at 425. However, if the injured individual unlawfully took the vehicle, the next step, under the "saving clause" of the statute, is to determine if that person "reasonably believed that he or she was entitled to take and use the vehicle." MCL 500.3113(a). See also *Plumb,* 282 Mich App at 427.

In this case, the first level of inquiry involves whether a claimant who had taken possession of a vehicle with the mistaken belief that the owner had given consent (when in fact the person who had given consent was not the owner and was not authorized to give consent) "had taken" the vehicle "unlawfully," within the meaning of MCL 500.3113(a). Our consideration of that question leaves us with the definite and

---

[3] In *Esurance,* the injured person was a passenger in the vehicle, and there was no evidence from which to conclude that *he* " 'had taken' the vehicle, let alone that he took it unlawfully." *Esurance,* 288 Mich App at 600-601.

firm conviction that the state of the law in this area has been hopelessly muddled and is in desperate need of clarity. It further, and once again, highlights for us the confusion and uncertainty that is created in the law when (a) legislatures craft statutory language without adequate specificity and definition, and (b) courts then create "judicial exceptions" to statutory schemes in order to fill in the blanks that were left by the legislature in drafting the statutory language that the courts are supposed to apply.

Our Supreme Court recently provided some clarity in this area in *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503; 821 NW2d 117 (2012). We endeavor herein to address and apply the statutory text to the facts before us, and also to appropriately apply the relevant caselaw, including the Supreme Court's recent decision in *Spectrum Health*, and thus to provide additional clarity in the context of the instant appeal.

### A. STATUTORY CONSTRUCTION

As always, our statutory analysis begins with the language of the statute at issue. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). As noted earlier in this opinion, MCL 500.3113(a) excludes a person from the otherwise applicable entitlement to personal protection insurance benefits for accidental bodily injury ("PIP benefits") if (a) "[t]he person was using a motor vehicle or motorcycle," (b) "which he or she had taken unlawfully," (c) "unless the person reasonably believed that he or she was entitled to take and use the vehicle."

There is no question here that plaintiff "was using a . . . motorcycle." *Id*. Therefore, the first condition is satisfied.

Less clear is whether the motorcycle was one "which [plaintiff] had taken unlawfully." *Id.* Unfortunately, the Legislature did not provide any definition of what "taken unlawfully" means, particularly in a context such as this. Given the lack of statutory definition, the courts have struggled ever since to provide the requisite definition in the various factual contexts in which the question has arisen.

Finally, and assuming that there was an unlawful taking, the question arises, under the "saving clause" of the statute, whether plaintiff had a reasonable belief that he was "entitled to take and use the vehicle." *Id.* Again, given the lack of legislative definition, the courts have grappled with the meaning of "entitled to take and use," and particularly whether, in the current context, "entitled to . . . use" relates to authorization from the vehicle's owner (or perhaps another person) or additionally encompasses entitlement from the state (e.g., in terms of licensure or insurance). *Id.*

### B. UNLAWFUL TAKING

By our reading of the statute, for a claimant to have "taken [a vehicle] unlawfully," (a) a vehicle must have been "taken," (b) the taking of the vehicle must have been "unlawful[]," (c) it must have been the injured claimant who took the vehicle unlawfully (by virtue of the statutory prefacing of the words "had taken unlawfully" with the identifier "he or she"), and (d) the injured person must therefore have both "taken" the vehicle and acted somehow "unlawfully" in doing so. *Id.*

Because "taken unlawfully" is legislatively undefined under the no-fault act, the courts have been left to discern whether the term means a taking that is (a) in violation of a criminal statute (and, if so, which ones), (b) without authorization of law, (c) without authoriza-

tion of any person, (d) without authorization of the vehicle's owner, or (e) something else. Our Supreme Court in *Spectrum Health*, 492 Mich at 509, has now provided some guidance in that respect, holding that "any person who takes a vehicle contrary to a provision of the Michigan Penal Code [MCL 750.1 *et seq.*] . . . has taken the vehicle unlawfully for purposes of MCL 500.3113(a)." The Court further found that "in this context, the term 'unlawful' can only refer to the Michigan Penal Code," *id.* at 517 n 22, and rejected the reasoning of prior caselaw that "did not address whether the end user of a vehicle violated the Michigan Penal Code", *id.* at 510.[4]

In our view, taking into appropriate consideration the statutory language and the caselaw, including *Spectrum Health*, the term "taken unlawfully" as used in MCL 500.3113(a) thus requires some action by the "end user" of the vehicle that is contrary to the Michigan Penal Code. At the same time, we cannot agree with plaintiff's pre-*Spectrum Health* characterization that "Michigan courts have repeatedly and correctly concluded that determination of an unlawful taking under MCL 500.3113 rest [sic] on whether possession violated criminal statutes such as MCL 750.413 [taking possession of and driving away a motor vehicle] or MCL 750.414 [unauthorized taking or use of a motor vehicle without intent to steal]." Not only does the statutory

---

[4] As the Supreme Court noted in *Spectrum Health*,

> [t]he word 'unlawful' commonly means 'not lawful; contrary to law; illegal,' and the word "take" is commonly understood as 'to get into one's hands or possession by voluntary action.' When the words are considered together, the plain meaning of the phrase 'taken unlawfully' readily embraces a situation in which an individual gains possession of a vehicle contrary to Michigan law. [*Spectrum Health*, 492 Mich at 516-517 (citations omitted).]

text not expressly say that, but neither in our view did the caselaw, at least until the Supreme Court's recent opinion in *Spectrum Health*.[5]

While we, therefore, are unable to conclude that the pre-*Spectrum Health* caselaw supports plaintiff's interpretation, the Supreme Court in *Spectrum Health* held—consistently with plaintiff's position—that an unlawful taking under MCL 500.3113(a) requires action by the "end user" that is "contrary to a provision of the Michigan Penal Code . . . ." *Spectrum Health*, 492 Mich at 509-510.

For the reasons that follow, we conclude that plaintiff did not take the motorcycle unlawfully under MCL 500.3113(a). Further, having reached that conclusion, we need not address the applicability of the saving clause of the statute or decide, under its second prong of analysis, whether plaintiff reasonably believed that he was entitled to take and use the vehicle. Accordingly, we reverse the trial court's finding of an unlawful taking under MCL 500.3113(a) and remand for further proceedings.

Recognizing that the Supreme Court in *Spectrum Health* has now addressed the issue, it remains helpful to consider that decision, and plaintiff's arguments, in the context of the preexisting case law. Because the caselaw gives context to our analysis, and because plaintiff argues that the caselaw requires an interpretation different from ours, we examine the development of the caselaw up to and including *Spectrum Health*. We believe that discussion further confirms our conclusion that the statutory scheme has long cried out for, and to some extent still requires, clarification.

---

[5] In fact, the Supreme Court in *Spectrum Health* expressly overruled (at least in part) many of the cases on which plaintiff purports to rely. *Spectrum Health*, 492 Mich at 510-511, 537-538.

With little analysis (albeit without the benefit of *Spectrum Health* having been decided when his brief was written), plaintiff cites (a) the nonmajority lead opinion and the dissent in *Priesman v Meridian Mut Ins Co*, 441 Mich 60; 490 NW2d 314 (1992), overruled by *Spectrum Health*, 492 Mich at 511; (b) a concurring opinion in *Allen v State Farm Mut Auto Ins Co*, 268 Mich App 342; 708 NW2d 131 (2005), overruled by *Spectrum Health*, 492 Mich at 511; (c) *Landon v Titan Ins Co*, 251 Mich App 633; 651 NW2d 93 (2002); (d) *Mester v State Farm Mut Ins Co*, 235 Mich App 84; 596 NW2d 205 (1999), overruled by *Spectrum Health*, 492 Mich at 511; and (e) *Butterworth Hosp v Farm Bureau Ins Co*, 225 Mich App 244; 570 NW2d 304 (1997), overruled by *Spectrum Health*, 492 Mich at 511.[6] On the basis of the supposed clarity of those decisions, plaintiff argues that he did not violate MCL 750.413 or 750.414 and that, therefore, he did not take the motorcycle unlawfully under MCL 500.3113(a). Plaintiff further concludes, as a result, that *Plumb* (on which the trial court relied in granting summary disposition to defendants) wrongly concluded that a person unlawfully takes a vehicle unless he or she had an "unbroken chain of permission traceable to the owner" (language that appears nowhere in *Plumb*). Plaintiff therefore argues that *Plumb* was wrongly decided and that, under MCR 7.215(J), we should reject it in favor of supposedly

---

[6] Apparently mistakenly, plaintiff also cites "*Roberts ex rel Irwin v Titan Ins Co*, 485 Mich 905, 907 (2009) (CORRIGAN, J., dissenting)." However the case that appears on the cited page is *Riley v State Farm Fire & Cas Co*, 485 Mich 905 (2009), in which Justice CORRIGAN issued a dissenting statement regarding an order denying leave to appeal on a matter that is not pertinent to this one. We assume that plaintiff intended to cite *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339; 764 NW2d 304 (2009), overruled by *Spectrum Health*, 492 Mich at 511 (discussed later in this opinion).

contrary controlling precedent issued before *Plumb*, but after November 1, 1990.[7]

We note that the Supreme Court in *Spectrum Health* did not (at least explicitly) overrule *Plumb* in any respect, and in fact favorably cited it (albeit on a point of law other than "unlawful taking"). *Spectrum Health*, 492 Mich at 518 n 25. But we also find *Plumb* to be distinguishable and not controlling here, particularly in light of *Spectrum Health*, and therefore decline plaintiff's invitation to reject *Plumb* as wrongly decided.

Plaintiff first relies on a nonmajority (three-justice) lead opinion of our Supreme Court in *Priesman*, in which, faced with a lack of clear legislative definition, a plurality of justices took it upon themselves to judicially read into MCL 500.3113(a) an exception for joyriding family members, even though joyriding indisputably is an unlawful activity.[8] This plurality opinion, while not binding precedent, thus suggested that a denial of PIP benefits resulting from the application of MCL 500.3113(a) was limited to situations of "thieves while driving stolen vehicles . . . ." *Priesman*, 441 Mich at 67 (opinion by LEVIN, J.). A three-justice dissent (authored by Justice GRIFFIN) in *Priesman* argued, to the contrary, that application of the MCL 500.3113(a) exclusion was not limited to "car thieves," and extended even to

[7] Regardless of its genesis or past application, the Supreme Court has now rejected the "chain of permissive use" theory. *Spectrum Health*, 492 Mich at 509-510.

[8] To add to the confusion, the lead opinion in *Priesman* did not identify the statutory provision prohibiting "joyriding." The *Priesman* dissent identified it as MCL 750.414. *Priesman*, 441 Mich at 69-70. This Court in *Mester*, 235 Mich App at 88, identified it not as MCL 750.414, but rather as MCL 750.413. In his brief on appeal in this case, plaintiff variously describes it both ways. A concurring opinion in *Allen*, 268 Mich App at 351 (KELLY, J., concurring), states that both MCL 750.413 and MCL 750.414 are "generically referred to as 'joyriding' offenses.' "

family members engaged in joyriding. *Id.* at 69-76
(GRIFFIN, J., dissenting). Neither the lead opinion nor
the dissent in *Priesman* stated, however, as plaintiff in
the instant case suggests, that the "taken unlawfully"
requirement of MCL 500.3113(a) requires a violation
specifically of MCL 750.413 or MCL 750.414, or
whether there might be some other basis for finding an
unlawful taking.[9]

Thereafter, this Court in *Bronson Methodist Hosp v
Forshee*, 198 Mich App 617; 499 NW2d 423 (1993),
overruled by *Spectrum Health*, 492 Mich at 510, found
that there was no "unlawful taking" when the injured
person had used the vehicle with the permission of his
friend, who in turn had used it with the permission of
his friend, who in turn had used it with the permission
of his father, the vehicle's owner. Given the dearth of
caselaw on what constitutes an "unlawful taking" in
this no-fault context, the Court found "guidance in the
decisions that have construed whether a vehicle was
taken with consent for purposes of the owner's liability
statute, MCL 257.401; MSA 9.2101," *id.* at 623, and
concluded that "the broad definition of "consent" em-
ployed by the Supreme Court in the owner liability
context is of equal applicability here," *id.* at 624. The
Court thus concluded that

> an owner who willingly surrenders control of his vehicle to
> others consents to the assumption of the risks attendant
> upon his surrender of control. That is, the person to whom
> the vehicle is entrusted may thereafter violate the instruc-
> tions of the owner, such as loaning the vehicle to another
> person. More to the point . . . when an owner loans his
> vehicle to another, it is foreseeable that the borrower may
> thereafter lend the vehicle to a third party and such further

---

[9] The lead opinion and the dissent in *Priesman* agreed that "unlawful-
ness" does not depend on "*conviction* of a crime." *Priesman*, 441 Mich at 63
n 5 (opinion by LEVIN, J.) (emphasis added); *id.*, at 72 (GRIFFIN, J., dissenting).

borrowing of the vehicle by the third party is, by implica-
tion, with the consent of the owner. [*Id.* at 624-625.[10]]

Because there was an "unbroken chain of permissive
use," the Court in *Bronson* found that the injured
person had not "taken [the vehicle] unlawfully" under
MCL 500.3113(a):

> Thus, returning to the case at bar, under the reasoning
> of [a leading Supreme Court decision concerning the own-
> er's liability statute], Mark Forshee's use of the vehicle at
> the time of the accident was with the owner's consent
> inasmuch as the owner, Stanley Pefley, entrusted the
> vehicle to his son, Thomas, who in turn entrusted the
> vehicle to Morrow, who finally entrusted it to Forshee.
> Given this unbroken chain of permissive use, we cannot say
> that Forshee's taking of the automobile was unlawful. . . .
> [T]he mere fact that the borrower violates the restrictions
> placed on him by the owner does not negate the fact that
> the subsequent taking by a third party is, by implication,
> with the owner's consent. Therefore, even though Stanley
> Pefley had placed restrictions on the use of the vehicle he
> entrusted to his son, including the specific restriction that
> Mark Forshee was not to use the vehicle, the fact that the
> vehicle was ultimately entrusted to Forshee in violation of
> those restrictions does not change the fact that the taking
> and use was with the owner's consent . . . . [*Id.* at 625.]

The "unbroken chain of permissive use" language
thus emanated not from *Plumb*, as plaintiff suggests,
but instead from *Bronson*.[11] Notably in our view, how-

---

[10] The Court in *Bronson* relied in part on the prior decision in *State
Farm Mut Auto Ins Co v Hawkeye-Security Ins Co*, 115 Mich App 675; 321
NW2d 769 (1982). In that case, the Court found that an employee's
personal use of his employer's vehicle after working hours did not fall
within the MCL 500.3113(a) exclusion—even though that use was
unauthorized by the vehicle's owner—because "the original taking . . .
was not unlawful . . . ." *Id.* at 682.

[11] Perhaps in recognition of this, plaintiff argues that *Bronson* "never
departed from *Priesman's* unanimous recognition that MCL 750.413 and

ever, the Court in *Bronson* did not say that *absent* an "unbroken chain of permissive use," there necessarily would *be* an "unlawful taking." In other words, the existence of an "unbroken chain of permissive use" was *sufficient*, according to *Bronson*, to conclude that there was no "unlawful taking." But the existence of an unbroken chain of permissive use was not required in order for there to have been no unlawful taking.[12]

Thereafter, in *Butterworth*, this Court adopted the *Priesman* "family member joyriding exception," in finding that a minor who took his mother's vehicle without her permission did not fall within MCL 500.3113(a). Although the Court in *Butterworth* recognized that the lead opinion in *Priesman* was nonbinding and even noted that "any joyriding exception seems to be in derogation of the clear language of the statutes," *Butterworth*, 225 Mich App at 249 n 2, it nonetheless felt "compelled" to follow it because a majority of the Supreme Court in *Priesman* had affirmed this Court's determination, "allowing coverage for a joyriding family member," *Butterworth*, 225 Mich App at 248-249.[13] In

MCL 750.414 govern determination of unlawful taking under MCL 500.3113(a)." But while it may be true that the Court in *Bronson* "never departed" from *Priesman*, it is also true that this Court's holding in *Bronson* did not rely on *Priesman* at all.

[12] Our Supreme Court has in any event now rejected "the *Bronson* Court's 'chain of permissive use' theory [as] inconsistent with the statutory language of the no-fault act," and as "not faithfully apply[ing] the standard articulated in MCL 500.3113(a) to determine whether the claimant 'had taken [the vehicle] unlawfully.' " *Spectrum Health*, 492 Mich at 521, 523 (third alteration in original). Instead, the Court found that because the claimant had violated MCL 750.414 (one of the joyriding statutes), "MCL 500.3113(a) precludes PIP benefits in this case." *Id.* at 524.

[13] We note that the Court of Appeals' decision in *Priesman* was decided, with limited analysis, on May 29, 1990, and released for publication on August 2, 1990. *Priesman v Meridian Mut Ins Co*, 185 Mich App 123; 460 NW2d 244 (1990). Therefore, it is not binding under MCR 7.215(J)(1)

adopting the "family member joyriding exception," the Court in *Butterworth* contrasted "joyriding" (which occurs "without the intent to steal") with "attempting to steal," *id.* at 249, and suggested that only a taking of a vehicle with "intent to steal" fell within MCL 500.3113(a) (at least if carried out by a family member).

Subsequently, in *Mester*, this Court declined to extend the joyriding exception created in *Priesman* and *Butterworth* to injured parties other than family members.[14] The Court specifically stated that "[a]n unlawful taking does not require an intent to permanently deprive the owner of the vehicle to constitute an offense," and that in drafting MCL 500.3113(a), "the Legislature chose a term that encompasses the offense of joyriding," *Mester*, 235 Mich App at 88. Noting that *Priesman* and *Butterworth* had created a " 'family member' joyriding exception," *id.* at 87, the Court declined to extend that exception to unrelated individuals.

In 2002, this Court in *Landon* found that *Butterworth* and *Mester* were inconsistent, and that they conflicted on the issue whether a violation of MCL 750.413 fell within the MCL 500.3113(a) exclusion:

> This Court has issued two decisions concerning whether a violation of MCL 750.413 qualifies as an "unlawful" taking and therefore allows application of the PIP benefits exclusion contained in MCL 500.3113(a). However, those

---

(which requires a panel of the Court of Appeals to follow the rule of law established by a prior published decision of this Court "issued on or after November 1, 1990") or its predecessor, Administrative Order No. 1990-6 (which was also effective on November 1, 1990), 436 Mich lxxxiv.

[14] A concurring opinion in *Butterworth* earlier had advocated for broadly reading the *Priesman* joyriding exception to include "*anyone* who is merely joyriding." *Butterworth*, 225 Mich App at 253 (HOEKSTRA, J., concurring). The concurrence also suggested that the MCL 500.3113(a) exclusion should "preclude[] coverage only where the person taking the vehicle unlawfully does so with the *intent to steal* . . . ." *Id.* (emphasis added).

decisions conflict. The *Mester* Court held that a violation of
MCL 750.413 precludes an injured person from recovering
PIP benefits under subsection 3113(a). *Mester, supra* at 88.
In contrast, the *Butterworth* Court held that a violation of
MCL 750.413 does not preclude an injured person from
recovering PIP benefits under subsection 3113(a). *Butter-
worth, supra* at 249-250. The conflict between these two
decisions appears to be premised on whether the "taken
unlawfully" language of subsection 3113(a) applies only in
situations where the injured person has "stolen" the ve-
hicle in which the person was injured. Further, the conflict
appears to arise from our Supreme Court's fractured
opinion in *Priesman v Meridian Mut Ins Co*, 441 Mich 60;
490 NW2d 314 (1992). [*Landon*, 251 Mich App at 640.]

Ultimately, the Court in *Landon* determined that it
did not need to resolve this conflict because it found,
under the facts before it,[15] that the injured party was a
"bailee" of the vehicle who possessed the vehicle with
the owner's consent and who arguably had the implied
(although not express) consent of the owner to use the
vehicle and, therefore, did not violate MCL 750.413, did
not take the vehicle unlawfully under the MCL
500.3113(a) exclusion and, accordingly, was entitled to
PIP benefits.[16] *Id.* at 641, 650.

In 2005, this Court decided *Allen*, which presented
the issue whether a live-in companion was a family
member for purposes of the *Priesman/Butterworth*

---

[15] The owner of the vehicle had received permission from the injured
person to park the car in her yard for purposes of attempting to sell the
vehicle. The owner left the keys in the unlocked car so that potential
purchasers could test-drive the vehicle. The injured person later used the
vehicle herself and was injured in an accident. *Landon*, 251 Mich App at
635-636.

[16] In distinguishing between MCL 750.413 and MCL 750.414, the Court
in *Landon* noted that MCL 750.413 is a felony provision, while MCL
750.414 is a misdemeanor provision. The Court found that "a violation of
MCL 750.414 does not call for application of the benefits exclusion
contained in subsection 3113(a) . . . ." *Id.* at 650.

"family member joyriding exception." A majority of this Court concluded that the exception did not apply, refusing to extend the exception to the facts of that case. *Allen*, 268 Mich App at 348. A concurring opinion expressly disagreed with the reasoning of *Butterworth* and with its "application of MCL 500.3113(a) only to car thefts," and endorsed the reasoning of Justice GRIFFIN's dissent in *Priesman. Id.* at 349-350 (KELLY, J., concurring).

In *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339; 764 NW2d 304 (2009), this Court once again had occasion to consider the exception created in *Priesman* and *Butterworth* for joyriding family members, considering the exception in connection with an injury to a minor who was driving, without permission, a motor vehicle that was owned by an unrelated person who lived with the minor and his mother. The owner had given possession of the vehicle to the minor's mother for her to use. *Id.* at 342-343. The trial court granted summary disposition to the insurer on the grounds that the minor had unlawfully taken the vehicle and that the *Priesman* joyriding exception did not apply. *Id.* at 347-348.

This Court reversed, and perhaps because of a presumption that the minor's mother "owned" the vehicle, *id.* at 354-356, did not rely on the opinions in *Mester* and *Allen*, which refused to extend the joyriding exception (created in *Priesman* and *Butterworth* to unrelated individuals. Instead, the Court in *Roberts* found the joyriding exception to be applicable, noting that *Butterworth* had found that "MCL 500.3113(a) did not apply to any person who takes a family member's vehicle for joyriding purposes; rather, the statute only operated to exclude a person from coverage if he or she had an actual intent to steal the vehicle." *Id.* at 351-352. But, expressing its disagreement with *Butterworth* and the

lead opinion in *Priesman*, the Court stated, "were we not so bound to follow the *Butterworth* decision, we would instead follow Justice GRIFFIN's dissent in *Priesman*, in which he concluded that, by creating the joyriding exception, the lead opinion improperly 'depart[ed] from the clear and unambiguous language of § 3113(a) . . . .' " *Id.* at 353-354 (citation omitted; alteration in original).[17]

In the context of this preexisting caselaw, the Supreme Court in *Spectrum Health* recently considered anew the "family member joyriding exception," as well as *Bronson's* "chain of permissive use" theory. In a decision that it described as "retrospective in its operation," the Court disavowed the plurality opinion in *Priesman*, "overrule[d] its Court of Appeals progeny as inconsistent with MCL 500.3113(a)," and overruled *Bronson's* application of the "chain of permissive use" theory. *Spectrum Health*, 492 Mich at 510, 536-538.[18]

While it is undisputed that the instant case does not present an issue of joyriding by a family member under the now disavowed exception created in *Priesman* and *Butterworth*, our examination of this caselaw adds to the overall context of the issues before us and aids in understanding the underpinnings of the legislative and judicial morass that has preceded our consideration of this appeal.

---

[17] In its original opinion of December 4, 2008, this Court in *Roberts v Titan Ins Co*, 281 Mich App 551, 574 (2008), declared a conflict with *Butterworth*, following which the judges of this Court were polled pursuant to court rule, and an order subsequently issued directing that a special conflict panel would not be convened pursuant to MCR 7.215(J). *Roberts v Titan Ins Co*, 281 Mich App 801 (2008). To the extent that such a conflict existed, *Butterworth* therefore remained controlling. MCR 7.215(J)(1).

[18] The Supreme Court expressly overruled *Butterworth*, *Mester*, *Allen*, and *Roberts* because "the family-joyriding exception has no basis in the language of MCL 500.3113(a) . . . ." *Spectrum Health*, 492 Mich at 511.

That brings us to *Plumb*, which plaintiff contends was wrongly decided and should not be followed. In *Plumb*, the injured person, Rae Plumb, who had been drinking for several hours at a bar, left the bar with two men, one of whom apparently gave her the keys to a vehicle and asked her to drive him. The man who gave her the keys turned out not to be the owner of the vehicle. Another man, David Shelton, testified that he had an agreement to buy the vehicle and had been using it for more than 30 days (and thus was considered an "owner" for purposes of the no-fault automobile insurance act), that he had left the keys in the vehicle when he parked it in the bar parking lot, and that he did not give the keys, or permission to drive the vehicle, to anyone. *Plumb*, 282 Mich App at 420-421.

Given Plumb's apparent level of intoxication, the trial court initially concluded that she had presented mere speculation and conjecture with respect to how she had received permission to drive the vehicle. On reconsideration, the trial court found that it did not matter, and that even assuming that she had permission, she was not entitled to drive the vehicle because she lacked a driver's license and was intoxicated. The trial court granted summary disposition in favor of the defendant, finding that the MCL 500.3113(a) exclusion applied. *Id.* at 422-423.

On appeal, this Court briefly addressed the "unlawful taking" requirement of MCL 500.3113(a), but, primarily focusing on the saving clause, affirmed the trial court's finding "because there is no genuine issue of material fact that Plumb did not have a reasonable belief that she was entitled to 'use' the Jeep, within the meaning of § 3113(a)." *Id.* at 423.

With respect to the "unlawful taking" requirement, this Court merely stated as follows:

> Although Plumb asserted that she received the keys from the unidentified man, there is no evidence that she received them from Shelton or the titled owner or otherwise had permission to take the Jeep and, accordingly, there is no material question of fact that Plumb lacked Shelton's consent or implied consent to take the Jeep. Nor is there any evidence to suggest that Plumb had an intent to permanently deprive Shelton of the Jeep, and thus her conduct could be considered joyriding. However, given that Plumb and Shelton are not family members, the joyriding exception is unavailable. Therefore, there is no genuine issue of material fact that Plumb unlawfully took the Jeep, and § 3113(a) applies. [*Id.* at 426-427 (citations omitted).]

The majority opinion in *Plumb* thus acknowledged the then existing *Priesman/Butterworth* "family member joyriding exception," noted that *Butterworth* had held that the MCL 500.3113(a) exclusion required an "actual intent to steal the vehicle" and an "intent to permanently deprive" the owner of the vehicle, but found the joyriding exception to be inapplicable because the injured person was not a family member of the owner. *Id.*

The Court provided no further analysis of when an "unlawful taking" occurs outside the context of the joyriding exception. The Court merely noted a lack of any evidence that the injured person had the "permission" of the owner to take the vehicle and concluded that "[t]herefore, . . . *Plumb* unlawfully took" the vehicle. *Id.* at 427. On its face, this might suggest that nothing further is required. However, we believe that the *Plumb* Court's analysis on this point was colored by two critical factors: (a) Plumb was intoxicated to such a level that it could not be determined whether she had reason to know that the taking of the vehicle was "unlawful" or without proper authority, and (b) she apparently left the bar, in that intoxicated condition,

with two men, one of whom was in possession of the car keys and with whom she *jointly* then "took" the vehicle.

It is not surprising, given those circumstances, that the Court in *Plumb* rather cursorily concluded that there had been an "unlawful taking," and instead focused on, and premised its affirmance on, the saving clause and Plumb's lack of a "reasonable belief" that she was "entitled to take and use the vehicle."

In this case, by contrast, the record evidence indicates that plaintiff had every reason to believe that he had obtained the motorcycle from its rightful owner, and there were no countervailing considerations (such as intoxication or joint conduct with the person who actually took the motorcycle from its rightful owner). We therefore find *Plumb* to be distinguishable rather than wrongly decided with regard to this first prong of the analysis—the issue of an "unlawful taking."

Plaintiff also contends that the court in *ACIA v Great American Ins Group*, 800 F Supp 2d 877, 883 (ED Mich, 2011), erred in applying *Plumb* and by "misreading" *Bronson*, to find an "unlawful taking" under MCL 500.3113(a) where, as here, a motorcycle operator was injured (in that case while taking the motorcycle on a test drive). We agree. While *ACIA* represents a fact pattern similar to that of the instant case, it is not binding on us and, for the reasons noted, it failed to correctly apply *Plumb* and the now overruled *Bronson*. Moreover, the court in *ACIA* appeared to recognize the fallacy of applying the caselaw as it did, reaching its conclusion only because the "Michigan caselaw . . . *seemingly compels the conclusion* that [the injured person] unlawfully took the motorcycle he was riding at the time he sustained his injuries." *Id.* (emphasis added). We believe that it does not, and we believe that our conclusion is buttressed by the Supreme Court's recent decision in *Spectrum Health*, as discussed herein.

Plaintiff further argues that *Plumb* "spawned" another "anomalous" unpublished decision of this Court in which we found an "unlawful taking" in the absence of an unbroken chain of permissive use. See *Farmers Ins Exch v Young*, unpublished opinion per curiam of the Court of Appeals, issued August 3, 2010 (Docket Nos. 275584 and 283865). The Supreme Court denied leave to appeal this Court's determination in that case. *Farmers Ins Exch v Young*, 489 Mich 909 (2011).[19] However, we again find *Young* distinguishable because there was a plethora of evidence in that case that demonstrated that the injured person actually knew and had reason to know that he in fact was not authorized to take the vehicle. Moreover, we did not, as plaintiff asserts, conclude that a taking is necessarily "unlawful *if* consent could not be implied through a chain of entrustment from the owner to the injured person." (Emphasis added; quotation marks and citation omitted.) To the contrary, we did not preclude a finding that a taking could be lawful even absent a "chain of entrustment."

Of note too is Justice MARILYN KELLY's dissent from the denial of the application for leave to appeal in *Young*:

---

[19] Interestingly, Justice MARKMAN indicated in a concurring statement that he would "refine the holding" of *Plumb. Young*, 489 Mich at 909 (MARKMAN, J., concurring). Citing *Mester* for the proposition that an "unlawful taking does not require an intent to permanently deprive the owner of the vehicle," Justice MARKMAN indicated instead that an unlawful taking "may occur where a person has taken a vehicle 'without authority.' " *Id.* (citation and quotation marks omitted) (Justice MARKMAN further stated that the "authority" in question was that of the "owner" and did not include that of the state, such that lack of proper insurance or licensure should not enter into the "unlawful taking" analysis). Citing to MCL 750.413 and MCL 750.414 for the proposition that an unlawful taking may occur when the taking of the vehicle is "without authority," Justice MARKMAN presaged the outcome in *Spectrum Health*, which cited with approval Justice MARKMAN's concurrence in *Young*, and which included those statutory joyriding proscriptions of the Michigan Penal Code within the "unlawful taking" component of MCL 500.3113(a). *Spectrum Health*, 492 Mich at 517-518.

> The question whether an individual violated a statute in taking a vehicle must be viewed from the perspective of the person taking the vehicle. This approach is mandated because statutes pertaining to the unlawful taking of a vehicle, such as MCL 750.413 or MCL 750.414, contain an element of intent.
>
> In the case at hand, defendant Young neither had the intent to steal nor to joyride when he drove Lee back to her cousin's home. When Lee showed up at his place of work in the vehicle with its owner's son in tow, she appeared to have the authority to drive the vehicle. [*Id.* at 912 (MARILYN KELLY, J., dissenting).]

While we would not necessarily endorse the conclusions of that dissent in the case in which it arose, we do believe that it appropriately recognized that, in construing the language of MCL 500.3113(a) that "he or she had taken [a vehicle] unlawfully," there must be some focus on the *conduct* of the *injured person* (i.e., the "he or she" in question), some characteristic of unlawfulness about that conduct, and some element of intent on the part of the actor. For the reasons noted, we believe this to be consistent with the text of the statute itself and, muddled though it has been, with the caselaw as well.

We further believe that our interpretation is consistent with the Supreme Court's recent pronouncements in *Spectrum Health.* In rejecting *Bronson*'s "chain of permissive use" theory, the Court found that *Bronson* improperly looked to the owner's liability statute, MCL 257.401, for guidance in interpreting MCL 500.3113(a), and thus improperly focused on "*an owner's* 'express or implied consent or knowledge,'" *Spectrum Health,* 492 Mich at 522. *Bronson* failed to recognize that MCL 500.3113(a) "examines the legality of the taking from the *driver's* perspective—a perspective that the owner's liability statute lacks." *Id.*

*Spectrum Health* thus clarifies that MCL 500.3113(a) requires us to "examine[] the legality of the taking from the *driver's* perspective," and further requires that the "end user" driver has taken the vehicle "contrary to a provision of the Michigan Penal Code." *Id.* at 510, 522. In this case, there is no dispute that plaintiff did not take the vehicle in violation of the Michigan Penal Code, and that, viewed from plaintiff's (the driver's) perspective, there was no "unlawful taking."[20]

Applying the text of the statute and the caselaw discussed in this opinion, we therefore conclude, on the basis of the record evidence, that there is no genuine issue of material fact that plaintiff did not take the motorcycle unlawfully under MCL 500.3113(a), and that the first prong of the statutory analysis is not satisfied. Simply put, plaintiff was not the person who took the vehicle unlawfully. He was a person who, with no unlawful intent and with no knowledge of any unlawful taking, used a vehicle that another person may have taken unlawfully. Accordingly, we reverse the trial court's award of summary disposition in favor of

---

[20] We note that the Supreme Court in *Spectrum Health* rejected the opinion of the dissent in that case that the majority's interpretation of MCL 500.3113(a) (as inclusive of unlawful takings by "anyone") " 'precludes a class of injured parties from recovering PIP benefits even when a party was given permission to take a car by an intermediate user.' " *Id.* at 518 n 26, quoting *id.* at 552 (Hathaway, J., dissenting). On the facts before it, the Court based its disagreement with the dissent on the existence of the saving clause of MCL 500.3113(a) (the second prong of analysis, discussed in part II(C) of this opinion). *Spectrum Health*, 492 Mich at 518 n 26. However, we do not read *Spectrum Health* as precluding a finding, in appropriate circumstances, that an "end user" who was given permission by an "intermediate user" also did not take a vehicle unlawfully under the first prong of analysis under MCL 500.3113(a). Our conclusion finds support in the Supreme Court's requirement that, under MCL 500.3113(a), an end user have violated the Michigan Penal Code in order to have "unlawfully taken" a vehicle. *Id.* at 510, 516-517. Where, as here, the end user did not violate the Michigan Penal Code, there is no "unlawful taking" within the meaning of MCL 500.3113(a).

defendants, and remand for further proceedings.

### C. REASONABLE BELIEF OF ENTITLEMENT TO TAKE AND USE VEHICLE

Given our conclusion that plaintiff did not take the vehicle unlawfully, we need not reach the second phase of analysis, under the saving clause of MCL 500.3113(a). Under that clause, even if an injured person had "taken [a vehicle] unlawfully", MCL 500.3113(a) does not apply if "the person reasonably believed that he or she was entitled to take and use the vehicle." *Id.* See also *Plumb*, 282 Mich App at 429. We therefore do not decide that question here and write further only to more expansively demonstrate how the uncertain state of the law would benefit from a further injection of clarity with respect to this second prong of analysis.

In construing the saving clause, this Court in *Plumb* distinguished between entitlement to "take" a vehicle and entitlement to "use" it. The Court stated, "[i]f Plumb received the keys from someone who appeared to own the Jeep, it would have been reasonable for her to believe that she was entitled to take the Jeep within the meaning of [the saving clause of] § 3113(a)." *Plumb*, 282 Mich App at 430. The Court thus found that there was a genuine issue of material fact concerning whether Plumb reasonably believed that she was entitled to *take* the vehicle. *Id.* at 430-431. However, the Court further found that because Plumb drove the vehicle while she was intoxicated (and because she additionally knew that her driver's license had been suspended), Plumb "could not have reasonably believed that she was entitled to *use* [the vehicle]." *Id.* at 431-432 (emphasis added).[21]

---

[21] Were we to reach the "saving clause" analysis in this case, we might be obliged to apply *Plumb* to reach a similar conclusion here because

Plaintiff argues that *Plumb* "disregarded established post-1990 published law that a suspended license does not exempt operation of the 'reasonable belief to use' exception," citing *Bronson* and *Butterworth*.[22] The Court in *Plumb* found, however, that *Bronson*'s discussion (in its "saving clause" analysis) of the ramifications of a claimant's lack of a driver's license was dictum because the Court's holding rested on there having been no unlawful taking at all (such that the "saving clause" analysis was superfluous). *Plumb*, 282 Mich App at 427 n 4, citing *Bronson*, 198 Mich App at 625-627. See also *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 436-437; 751 NW2d 8 (2008) (defining obiter dictum to include "a judicial opinion in a matter related but not essential to a case") (citation and quotation marks omitted). Cf. *Boodt v Borgess Med Ctr*, 481 Mich 558, 563 n 4; 751 NW2d 44 (2008) (indicating that a discussion that is not essential to the case does not create a rule of law).

The Court in *Plumb* therefore arguably read into the "entitled to . . . use" language of the saving clause a requirement that the person be able to "legally operate the vehicle" under the motor vehicle laws. *Plumb*, 282 Mich App at 431-432. See also *id.* at 433 (O'CONNELL, J., dissenting). Justice MARKMAN has since opined that "[w]hether the use was 'legal' will often be a highly relevant factor in making this determination" under the saving clause (but not under the initial "unlawful taking" analysis). *Young*, 489 Mich at 909 (MARKMAN, J.,

plaintiff used the motorcycle knowing that his Tennessee driver's license had been suspended and that he had not obtained a valid Michigan driver's license.

[22] If *Plumb* conflicts with either of those decisions, this Court is obligated to follow the first opinion issued. See *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 473; 556 NW2d 517 (1996) ("When a panel is confronted with two conflicting opinions published after November 1, 1990, the panel is obligated to follow the first opinion issued.").

concurring in the order denying the application for leave to appeal). Justice MARILYN KELLY finds it relevant to neither analysis. *Id.* at 913 (MARILYN KELLY, J., dissenting) ("Notwithstanding the fact that Young did not have a valid driver's license, under the facts of this case, his belief that he was entitled to take and use the vehicle was reasonable.").

In *Butterworth*, this Court addressed the insurer's argument that the claimant "took the vehicle unlawfully because he took it knowing that he . . . was not entitled to be a licensed driver." *Butterworth*, 225 Mich App at 250. In rejecting that argument, the Court therefore addressed (in a conclusion that appears now to have been called into question by at least two of our current Supreme Court justices as noted earlier in this opinion), the licensure issue in the context of the "unlawful taking" prong of analysis. It did not, however, examine it under the second level of inquiry, i.e., the saving clause. *Butterworth* therefore did not establish a rule of law on that point.

What does all of this mean? It again means that the law, not only as to the "unlawful taking" analysis, but additionally with regard to the saving clause of MCL 500.3113(a), has been (and to some extent remains) seriously muddled and in need of clarification. With respect to the saving clause of MCL 500.3113(a), any analysis will require a fact-intensive inquiry that may ultimately constitute a question for the fact-finder. For the reasons noted, we confine our effort to provide clarity to the "unlawful taking" component of the analysis and need not (and do not) reach the saving clause.

### III. CONCLUSION

For the reasons stated, we find that plaintiff did not take a vehicle unlawfully within the meaning of

MCL 500.3113(a). Accordingly, we reverse the trial court's order granting summary disposition to defendants. We note that, in and of itself, our finding that plaintiff should not be *denied* PIP benefits under the MCL 500.3113(a) exclusion is not dispositive of whether plaintiff is *entitled* to PIP benefits, or from whom. Those issues remain to be addressed in the trial court. Accordingly, we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

DONOFRIO, P.J., concurred with BOONSTRA, J.

RONAYNE KRAUSE, J. *(concurring in part and dissenting in part).* I concur in the majority's application of our Supreme Court's recent decision of *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503; 821 NW2d 117 (2012), to the facts of this case. I respectfully dissent from the majority's analysis of prior caselaw from this Court decided before, and therefore without the benefit of, *Spectrum Health*. Irrespective of whether I believe that analysis to be sound, I believe it is unnecessary; at best, it is dicta. I would limit my analysis to whether the specific plaintiff before us in the instant matter took the particular motorcycle in question "unlawfully" under these circumstances within the meaning of MCL 500.3113(a). I would decline to speculate further as to matters not now before us, and I would also decline to invite the reader to do so. I agree with the result reached by the majority: plaintiff did not take the motorcycle "unlawfully." I therefore also join in the relief ordered.